IN THE COURT OF APPEALS OF TENNESSEE
AT JACKSON
October 22, 2008 Session

**TRACY LYNN AUTRY, BY AND THROUGH HER
NEXT FRIEND AND MOTHER, CAROL HOOD, AND
CAROL HOOD, IN HER INDIVIDUAL CAPACITY**

**v.**

**PHIL HOOKER, TEACHER AT MILAN HIGH SCHOOL; JAMES TOWATER, IN
HIS OFFICIAL CAPACITY AS DIRECTOR OF SCHOOLS OF THE MILAN SPECIAL
SCHOOL DISTRICT; TIM WARREN, AS PRINCIPAL OF MILAN HIGH SCHOOL;
JERRY JOHNSON, FEDERAL RIGHTS COORDINATOR OF THE
MILAN SPECIAL SCHOOL DISTRICT; AND BOARD OF DIRECTORS
OF THE MILAN SPECIAL SCHOOL DISTRICT**

**An Appeal from the Circuit Court for Gibson County
No. 8103    Clayburn L. Peeples, Judge**

---

**No. W2008-01027-COA-R3-CV - Filed May 15, 2009**

---

This appeal involves a sexual harassment claim by a student against a school district. The plaintiff
was a student at a high school located in the defendant school district. In her senior year, the
plaintiff enrolled in a class taught by the defendant teacher. Several times during class, the teacher
made inappropriate comments to the plaintiff. The plaintiff reported the teacher's behavior, an
investigation was conducted, and ultimately the teacher received a letter of reprimand. The plaintiff
then filed this lawsuit against the teacher, the school district, and other school district employees in
their official capacities. The trial court granted summary judgment in favor of the school district and
its employees, and it denied summary judgment to the teacher. The plaintiff student now appeals
the grant of summary judgment in favor of the school district and its employees. We affirm,
concluding that the student's claims essentially alleged civil rights violations and, therefore, these
defendants are immune from suit under the GTLA.

**Tenn. R. App. P. 3 Appeal as of Right; Judgment of the Circuit Court is Affirmed**

HOLLY M. KIRBY, J., delivered the opinion of the Court, in which ALAN E. HIGHERS, P.J., W.S., and
DAVID R. FARMER, J., joined.

Sam J. Watridge, Humboldt, Tennessee, for the appellant, Tracy Lynn Autry.

Jennifer K. Craig and Jay G. Bush, Jackson, Tennessee, for the appellees, James Towater, Tim Warren, Jerry Johnson, and the Board of Directors of the Milan Special School District.

# OPINION

## FACTS AND PROCEEDINGS BELOW

Plaintiff/Appellant Tracy Lynn Autry ("Autry") was a student at Milan High School in the Milan Special School District in Milan, Tennessee. During the 2003-2004 school year, when Autry was a junior, she took two vocational classes from Defendant teacher Phil Hooker ("Hooker"). During the course of the classes, Autry heard Hooker make several boorish and inappropriate remarks to students.[1] Hooker referred to another female student as "Topsy," alluding to her buxom figure, and referred to a female teacher as "a whole lot of woman." He also told students, "if you want it done right, don't let the girls do it." Hooker maintained a scrapbook that included inappropriate photographs of students, such as a photograph of two students "mooning" each other on a student trip. On another occasion, during class, Hooker drew what looked to be a lightbulb on the class board. After asking the students to identify what the drawing was, he told them that it was "a fat woman trying to pull her underwear up."

The next school year, when Autry was a senior, she enrolled in a greenhouse management class taught by Hooker. Not surprisingly, Hooker continued his habit of making crude, vulgar comments, this time aimed at Autry. On one occasion, he remarked that he believed that Autry was wearing "butt floss." In another instance, when Hooker's class was pollinating tomatoes, he told the students that pollinating tomatoes by hand was like "giving the plants a handjob" and commented that Autry was "probably good at giving handjobs." On another occasion, when Hooker wanted to sit in the chair in which Autry was sitting, he told her to "get her fat ass up" out of the chair. At the time these comments were made, Autry was seventeen years old.[2]

After the last incident, Autry went to her next class, taught by a nursing instructor, Ms. Tucker ("Tucker"). Autry told Tucker about Hooker's offensive comments. Tucker advised Autry to tell one of the school principals about the incident. Autry also occasionally confided in Joann Canada ("Canada"), a bookkeeper with whom Autry worked in the school office. Canada advised Autry to tell Assistant Principal Kris Todd ("Todd") about Hooker's conduct.

Autry decided to take this advice. The day after Hooker made the third comment, on approximately December 10, 2004, Autry went to Hooker's class, but told him that she was not feeling well. Hooker asked if Autry had her assignment, but she did not. Autry left the classroom

---

[1]These facts are not disputed for purposes of this appeal.

[2]Autry's date of birth is July 16, 1987. By the time of the final hearing in this case, Autry had reached majority and was married.

and went to Assistant Principal Todd's office. There she reported all of Hooker's inappropriate behavior. Because only one week remained in the semester, Todd suggested that Autry go back and finish the class, but Autry declined, and Todd did not require her to do so.[3] Todd asked for a written account of Autry's allegations against Hooker, which she provided. Autry's mother, Carol Hood ("Hood"), also met with Todd, and he referred her to Defendant/Appellant Jerry Johnson ("Johnson"), the Federal Rights Coordinator of the Milan Special School District.

On December 14, 2004, Hood and Autry met with Johnson to discuss Hooker's misconduct. They completed and filed a Milan Special School District Discrimination Grievance Form. The next day, Johnson began investigating Autry's complaint. He interviewed Hooker, several students, and others as well. Ultimately, Johnson issued Hooker a written reprimand, warning him that continued inappropriate conduct would jeopardize his job. On January 21, 2005, Johnson wrote a letter to Hood, Autry's mother, regarding the investigation and the disciplinary action that was taken against Hooker.[4]

Autry had no more contact with Hooker. However, in apparent reprisal for her report of Hooker's misdeeds, Autry was verbally harassed, threatened, and humiliated by some students at the high school. For example, some students called out "Hooker" to Autry as she passed them in the hallway. Hooker later admitted that he had told several students about Autry's complaints against him, that he was aware that the students were harassing Autry for this reason, and that he did nothing to stop the harassment. Neither Autry nor Hood reported the student harassment to any school official.

Thereafter, Autry was diagnosed with adjustment disorder with anxiety and depression. Her grades fell during her senior year, allegedly as a result of the harassment she endured from both Hooker and the students.

On July 5, 2005, Autry, by and through Hood, and Hood in her individual capacity (collectively, "Plaintiffs"), filed this lawsuit against Hooker, Johnson, Tim Warren ("Warren"), the Principal of Milan High School, James Towater ("Towater"), the Director of Schools of the Milan School District, and against the Board of Directors of the Milan Special School District ("School District"). The complaint was based on Hooker's misconduct and the defendants' response. The Plaintiffs alleged that the defendants were liable for intentional infliction of emotional distress, retaliation, breach of contract, hazing, teacher malpractice, loss of consortium, and gross negligence. As to the defendants other than Hooker, the Plaintiffs asserted that they did not take appropriate steps to stop the harassment against Autry, and that they were grossly negligent in not having a system in place to receive, investigate, and resolve such reports or complaints of misconduct.

The defendants filed a notice to remove the lawsuit to federal court, claiming that Autry's complaint stated civil rights claims pursuant to federal law, specifically 42 U.S.C. § 1983. On

---

[3]Canada later said that Todd told Autry to go back to class and apologize to Hooker for leaving class.

[4]Hooker has since resigned from his position with the Milan Special School District.

August 1, 2005, Autry filed an objection to removal, and the case was remanded to state court. Extensive discovery ensued.

On August 3, 2007, defendants Towater, Warren, Johnson, and the Board of Directors (collectively, "Defendants") filed a motion for summary judgment. In support of the motion, the Defendants submitted, among other things, the depositions of Autry, Hood, Canada, Towater, Warren, Johnson, Hooker, and Todd. The Defendants argued that the Plaintiffs' claims were based on legal theories of recovery that have never been recognized in Tennessee, and for which governmental immunity has not been removed. Defendants Towater, Warren, and Johnson asserted that claims against them in their official capacities were in essence claims against their employer, the School District, under the Governmental Tort Liability Act ("GTLA"). Because the School District was a named defendant, they contended, the claims against the individuals were duplicative and should be dismissed. They maintained that they were immune from suit under the GTLA, because the Plaintiffs did not allege that the acts committed were willful, malicious, criminal, or performed for personal financial gain, nor was any evidence submitted to support such allegations. *See* Tenn. Code Ann. § 29-20-310(c) (Supp. 2008). In addition, the Defendants noted that the complaint was based on Hooker's intentional misconduct, and they argued that governmental entities are immune from actions based on certain intentional conduct of its employees, including civil rights violations. *See* Tenn. Code Ann. § 29-20-205(2) (2000). Regarding the Plaintiffs' claims of retaliation or hazing, the Defendants pointed out that immunity under the GTLA is not removed for such suits. They argued that the Plaintiffs' breach of contract claim must be dismissed because the Plaintiffs were not third-party beneficiaries of Hooker's contract with the School District. Finally, the Defendants maintained that the Plaintiffs' claim of teacher malpractice had no basis in Tennessee law. Because the Defendants were entitled to summary judgment on the primary claims, the Defendants argued, Hood's derivative claim of loss of consortium must also be dismissed.[5]

On September 5, 2007, the Plaintiffs filed a response to the summary judgment motions, claiming that the Defendants' actions amounted to willful, wanton, or gross negligence. They argued that some of their claims for relief, such as the claims for breach of contract and loss of consortium, were not affected by the GTLA. They contended that the individual defendants sued in their official capacities were grossly negligent in their investigation of Hooker, and that they violated their own policies in conducting the investigation. In support of their response to the summary judgment motion, the Plaintiffs relied on the deposition testimony submitted by the Defendants. They submitted no additional documentation to their response.

On September 12, 2007, the trial court heard arguments on the parties' motions. At the conclusion of the hearing, the trial court granted summary judgment in favor of all of the Defendants, except Hooker, based on immunity under the GTLA. On April 15, 2008, the trial court entered an order consistent with its oral ruling. The trial court held:
> 1. That Mr. Towater, Mr. Warren, and Mr. Johnson, in their official capacities, did not engage in willful, malicious or criminal acts with intent to harm the Plaintiff and

---

[5]On August 17, 2007, Hooker also filed a motion for summary judgment, which is not at issue here.

-4-

therefore, each is immune from suit under Tennessee's Governmental Tort Liability Act (hereinafter "GTLA"). Tenn. Code Ann. § 29-20-310 (2007).

2. That under the GTLA, governmental entities are immune from suits alleging intentional infliction of emotional distress. Tenn. Code Ann. § 29-20-205 (2007).

3. That the GTLA provides that governmental entities are immune from suit unless the immunity is removed by the State Legislature. Tenn. Code Ann. § 29-20-201(a) (2005).

4. Pursuant to the GTLA, immunity from suit has not been removed for allegations involving civil rights. Tenn. Code Ann. §20-205(2) [sic]

5. Plaintiff failed to make a claim for retaliation or hazing against the Defendants.

6. That the parties to a contract must intend the object or purpose of the contract to be for the direct benefit of a third-party for any third-party beneficiary relationship to be created. Coburn v. Dyersburg, 774 S.W.2d 610, 612 (Tenn. Ct. App. 1989).

7. That the Plaintiff is not intended third party beneficiaries [sic] of the employment contract between the School District and Defendant Phil Hooker, a teacher, and therefore are not entitled to damages because of Defendant Hooker's alleged violation of the School District's policy.

8. That a claim for teacher malpractice is not recognized under Tennessee law.

9. That the alleged intentional acts of Defendant Hooker were not foreseeable to Mr. Towater, Mr. Warren, and Mr. Johnson in their official capacities and the School District, therefore no liability for negligence exists as to these Defendants respectively. See Limbaugh v. Coffee Med. Ctr., 59 S.W.3d 73 (Tenn. 2001).

10. That Plaintiff Carol Hood's loss of consortium claim is derivative; therefore, [it] should be dismissed.

Because the order did not adjudicate all the claims of all the parties before the court, the trial court made the order final and appealable pursuant to Rule 54.02 of the Tennessee Rules of Civil Procedure. From this order, Autry now appeals.[6]

---

[6]Hood is not listed as an appellant in her individual capacity in the notice of appeal.

## ISSUES ON APPEAL AND STANDARD OF REVIEW

On appeal, Autry argues that the trial court erred in determining that Defendants Towater, Johnson, Warren, and the Special School District are immune from liability under the GTLA, because their conduct amounted to willful, wanton, or gross negligence. In addition, Autry argues that a governmental entity may be held liable for the intentional misconduct of an employee if the intentional misconduct could reasonably have been foreseen by the entity, and the governmental entity fails to protect the plaintiff from that foreseeable risk. In response, the Defendants argue that the School District is immune from suit, because Autry's claims for relief are essentially civil rights claims. Pursuant to the GTLA, immunity is not removed from a governmental entity for injuries caused by an employee's civil rights violation or infliction of emotional distress. The individual Defendants are immune, they contend, because the governmental entity is immune, and the conduct of the individual Defendants was not "willful, malicious, criminal, or performed for personal financial gain." *See* Tenn. Code Ann. § 29-20-310(c). Therefore, the Defendants argue, the trial court's grant summary judgment was appropriate.

We review the trial court's grant of summary judgment *de novo* with no presumption of correctness. ***Warren v. Estate of Kirk***, 954 S.W.2d 722, 723 (Tenn. 1997). Summary judgment is appropriate where "the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." Tenn. R. Civ. P. 56.04. The issues that lie at the heart of a motion for summary judgment are (1) whether a factual dispute exists; (2) whether the disputed fact is material to the outcome of the case; and (3) whether the disputed fact creates a genuine issue for trial. ***Byrd v. Hall***, 847 S.W.2d 208, 211 (Tenn. 1993). In deciding these issues, we must view the evidence in the light most favorable to the nonmoving party, giving that party the benefit of all reasonable inferences. ***Warren***, 954 S.W.2d at 723 (quoting ***Bain v. Wells***, 936 S.W.2d 618, 622 (Tenn. 1997)). Once the moving party demonstrates that no genuine issues of material fact exist, the non-moving party must demonstrate, by affidavit or otherwise, that a disputed issue of material fact exists for trial. ***Byrd***, 847 S.W.2d at 211. If the facts, when viewed in the light most favorable to the non-moving party, permit a reasonable person to reach only one conclusion, summary judgment should be granted. ***McCall v. Wilder***, 913 S.W.2d 150, 153 (Tenn. 1995).

## ANALYSIS

The issues in this appeal are governed by the GTLA.[7] In general, the GTLA provides that governmental entities, such as the School District in this case, are immune from suit unless the immunity is removed by the Tennessee Legislature. It states:

(a) Except as may be otherwise provided in this chapter, all governmental entities shall be immune from suit for any injury which may result from the activities of such

---

[7] A school district is a "governmental entity" under the GTLA. *See* Tenn. Code Ann. § 29-20-102(3)(A) (Supp. 2008).

governmental entities wherein such governmental entities are engaged in the exercise and discharge of any of their functions, governmental or proprietary.

...

[(b)](2) All members of boards, commissions, agencies, authorities, and other governing bodies of any governmental entity, created by public or private act, whether compensated or not, shall be immune from suit arising from the conduct of the affairs of such board, commission, agency, authority, or other governing body. Such immunity from suit shall be removed when such conduct amounts to willful, wanton, or gross negligence.

Tenn. Code Ann. § 29-20-201 (Supp. 2008). Governmental entities are not immune, however, from lawsuits based on injuries caused by the negligent act or omission of an employee, except in certain situations enumerated by statute:

Immunity from suit of all governmental entities is removed for injury proximately caused by a negligent act or omission of any employee within the scope of his employment except if the injury arises out of:

...

(2) false imprisonment pursuant to a mittimus from a court, false arrest, malicious prosecution, intentional trespass, abuse of process, libel, slander, deceit, interference with contract rights, *infliction of mental anguish*, invasion of right of privacy, or *civil rights* . . . .

Tenn. Code Ann. § 29-20-205(2) (emphasis added). Subsection 2 of this statute is sometimes referred to as the "intentional tort exception" to the general removal of immunity for an employee's negligence. ***See Limbaugh***, 59 S.W.3d at 79. Thus, when the injury caused by the governmental employee arises out of one of the listed intentional torts, the governmental entity is immune from suit.

An individual employee of a governmental entity is immune when the governmental entity for which he works is immune from suit, unless the employee's act or omission was willful, malicious, criminal, or performed for personal financial gain:

(c) No claim may be brought against an employee or judgment entered against an employee for injury proximately caused by an act or omission of the employee within the scope of the employee's employment for which the governmental entity is immune in any amount in excess of the amounts established for governmental entities in § 29-20-403, *unless the act or omission was willful, malicious, criminal, or performed for personal financial gain*, or unless the act or omission was one of medical malpractice committed by a health care practitioner . . . .

Tenn. Code Ann. § 29-20-310(c) (emphasis added).

Against this backdrop, we consider Autry's arguments on appeal. Autry disputes the trial court's reliance on ***Limbaugh v. Coffee Med. Ctr.***, 59 S.W.3d 73 (Tenn. 2001). She argues that the

holding in *Limbaugh* supports her position that the School District is not immune under the intentional tort exception of the GTLA. *See* Tenn. Code Ann. § 29-20-205(2). In *Limbaugh*, a nursing assistant employed by a state nursing home physically assaulted a ninety-year-old resident of the nursing home. The resident, through her conservator, sued both the nursing assistant and the nursing home for her injuries. After a bench trial, the trial court concluded that the nursing home was negligent, because the nursing assistant was known to be combative, and that the risk of the harm inflicted on the plaintiff was foreseeable. Therefore, because the nursing home negligently failed to take precautionary action to prevent the incident, the trial court held both the nursing assistant and the nursing home liable for the resident's injuries. *Limbaugh*, 59 S.W.3d at 77.

The intermediate appellate court affirmed the decision as against the nursing assistant, but it reversed the decision against the nursing home, finding that governmental immunity was not removed based on the intentional tort exception set out in Section 29-20-205(2). *Id.* at 78. Upon further appeal, the Supreme Court reversed the intermediate appellate court's holding that the nursing home was immune from suit. The Supreme Court noted that the nursing home had been found negligent, and that the risk of harm to the resident had been found to be foreseeable. It determined that immunity had been removed for the nursing home's negligence under Tennessee Code Annotated § 29-20-205, and that the intentional tort exception contained in subsection (2) of that statute did not apply. The *Limbaugh* Court held that the exception in subsection (2) applied only to the intentional torts enumerated in the statute.[8] *See id.* at 81. Because "assault and battery" was not one of the intentional torts enumerated, the Court held, the exception to the removal of immunity for such actions did not apply:

> Based on the plain language of section 29-20-205, the injury inflicted on Ms. Limbaugh was "proximately caused by a negligent act or omission" of this nursing home's supervisory personnel. Although it is that negligence of which the plaintiff complains, it is clear that Ms. Limbaugh's injuries "arose out of" the intentional torts of assault and battery committed by Ms. Ray. Because these torts are conspicuously absent from the intentional tort exception rendering governmental entities immune from liability for injuries, we hold that the clearly negligent defendant is not immune under this exception.

*Id.* at 84. Thus, immunity for the nursing home was not removed, it was subject to suit, and the Court upheld the trial court's judgment as to the nursing home.

In the instant case, Autry argues that *Limbaugh* supports her position that these Defendants are not immune from suit. She claims that, because the Defendants could reasonably have foreseen the damage caused by Hooker's intentional conduct, and they nevertheless failed to protect her from harm, immunity is not removed under the "intentional tort" exception. Autry emphasizes Hooker's long history of inappropriate behavior, as well as evidence that the school system did not have

---

[8]The Limbaugh Court overruled *Potter v. City of Chattanooga*, 556 S.W.2d 543 (Tenn. 1977), "to the extent that it retains immunity from liability for those torts *not specifically enumerated in the intentional tort exception*." *Limbaugh*, 59 S.W.3d at 81.

sufficient complaint managers to investigate such claims. She argues that these circumstances show that Hooker's conduct was foreseeable by the Defendants.

The holding in ***Limbaugh***, however, was based on the fact that Limbaugh's injuries arose out of intentional torts not enumerated in subsection (2) of Section 29-20-205. If the injury alleged arises out of a tort that is listed, the issue of foreseeability need not be reached. In the case at bar, Autry's injuries arise from her claims of intentional inflicting of emotional distress or her claims of sexual harassment, *i.e.*, a violation of Autry's civil rights. Both are specifically enumerated in subsection 2 of Section 29-20-205. Therefore, even if it were established that Hooker's actions against Autry were foreseeable, immunity against these Defendants is not removed under the statute.

Autry next argues that summary judgment in favor of the Defendants was not appropriate, because the evidence showed that the Defendants' conduct amounted to willful, wanton, or gross negligence. "Gross negligence" is a "conscious neglect of duty or a callous indifference to consequences." ***Conroy v. City of Dickson***, 49 S.W.3d 868, 871 (Tenn. Ct. App. 2001).

We must respectfully disagree. First, the individual Defendants were sued only in their official capacities. "Official-capacity" suits are in essence another way of pleading an action against the entity represented by the individual defendant. ***See Leach v. Shelby County Sheriff***, 891 F.2d 1241, 1245 (6th Cir. 1989) (citing ***Kentucky v. Graham***, 473 U.S. 159, 165-66 (1985)). Therefore, insofar as the School District is immune from suit, the individual Defendants in their official capacities share that immunity.[9]

In addition, the undisputed evidence does not support an allegation of willful, wanton, or gross negligence. The evidence showed that Autry and Hood reported Hooker's conduct to Johnson on approximately December 14, 2004. Johnson began his investigation into the matter the very next day, and the evidence indicates clearly that he conducted the investigation in a reasonable manner. The deposition testimony submitted by the Defendants showed that Johnson interviewed Hooker, students, and other teachers in an expedient manner. He performed follow-up interviews with students whose names were mentioned in the previous interviews. In her deposition, Hood admitted that Johnson's investigation was not a sham, and that Johnson did not purposefully conduct a poor investigation. Autry alleged that she was damaged by the harassment of the students at the high school after she reported Hooker's conduct; nevertheless, neither she, nor Hood, nor anyone else put the School District on notice of the students' harassment. Under these circumstances, Autry's allegation that the Defendants are at fault for failing to investigate the students' conduct is unsupported. The crux of Autry's argument is that, despite the School District's investigation, the punishment ultimately meted out to Hooker was not sufficiently severe. Even if the punishment was insufficient, however, this does not support the Plaintiffs' allegation that the Defendants acted in a willful, wanton, or grossly negligent manner.

_____

[9]The individual defendants sued in their official capacities argue that they should be dismissed, because the suit against them in their official capacity is duplicative of the suit against the entity that they represent. In light of our conclusion that they share the immunity of the sovereign, we need not address this issue.

Autry contends that her allegation of gross negligence is supported by Towater's admission that the School District does not have two complaint managers for each school, in accordance with its own policy. Rather, there are two complaint managers for the entire School District. This is simply irrelevant in this case. Autry had no problem accessing a complaint manager to process her claim. The grievance system was in place, it was utilized, and Autry's complaint was reviewed by the relevant personnel. In sum, the evidence in the record does not support a claim that Johnson, Towater, or Warren committed any willful or wanton acts or any acts of gross negligence.

Finally, Autry maintains that she stated viable claims for relief based on hazing, retaliation, breach of contract, and teacher malpractice. We have reviewed the trial court's ruling and its reasoning, the record, and the evidence submitted, and Autry's legal arguments on these claims. We must conclude that the trial court did not err in granting summary judgment in favor of the Defendants on Autry's claims based on hazing, retaliation, breach of contract, and teacher malpractice. Our decision pretermits all other issues raised in this appeal.

The decision of the trial court is affirmed. Costs on appeal are to be taxed to Appellant Tracy Lynn Autry and her surety, for which execution may issue, if necessary.

_____
HOLLY M. KIRBY, JUDGE