FILED

AUG 0 8 2017

Clerk of the Courts

# IN THE COURT OF APPEALS OF TENNESSEE
## AT NASHVILLE
### September 7, 2016 Session

## DONNA MARIA VETRANO, ET AL. v. STATE OF TENNESSEE

**Appeal from the Tennessee Claims Commission, No. T20160051,
Robert N. Hibbett, Commissioner**

---

### No. M2015-02474-COA-R3-CV

---

Former inmate and her husband filed a complaint against the State of Tennessee, alleging that state employees negligently supervised and retained a prison guard who sexually assaulted the inmate. The Tennessee Claims Commission determined it lacked subject matter jurisdiction to hear the claim and dismissed the complaint. We conclude that the former inmate's claim falls within a category of claims for which the Claims Commission has exclusive jurisdiction, specifically the "[n]egligent care, custody and control of persons." Tenn. Code Ann. § 9-8-307 (Supp. 2016). We also conclude the complaint does not seek to hold the State liable for the willful, malicious, or criminal act of a state employee. Accordingly, we reverse.

**Tenn. R. App. P. 3 Appeal as of Right; Judgment of the Tennessee Claims
Commission Reversed and Case Remanded**

W. NEAL McBRAYER, J., delivered the opinion of the court, in which D. MICHAEL SWINEY, C.J., and ANDY J. BENNETT, J., joined.

Brandt M. McMillan, Nashville, Tennessee, for the appellants, Donna Marie Vetrano and Ronald David Coggins.

Herbert H. Slatery, III, Attorney General and Reporter; Andrée S. Blumstein, Solicitor General; and Jennifer L. Brenner, Senior Counsel, for the appellee, State of Tennessee.

# OPINION

## I.

Donna Maria Vetrano and Ronald David Coggins (collectively "Claimants") filed a claim against the State seeking injunctive relief and compensatory damages after Ms. Vetrano was allegedly sexually assaulted by a prison guard while she was an inmate at the Tennessee Prison for Women.[1] Claimants averred that state employees negligently supervised and retained the prison guard who assaulted Ms. Vetrano.

In addition to the claim against the State, Claimants filed a separate suit against the prison guard in the Circuit Court for Davidson County, Tennessee. By statute, they could not pursue the circuit court action unless the Claims Commission determined that the prison guard acted outside the scope of his employment.[2] *Id.* § 9-8-307(b). Consequently, Claimants filed a motion with the Claims Commission seeking such a determination and a motion to transfer their claim against the State to circuit court.

Before the Claims Commission, the State filed a motion to dismiss. The State asserted that the Claims Commission lacked jurisdiction because the State could not be liable "for the willful, malicious, or criminal acts of state employees." *See id.* § 9-8-307(d). The State also asserted that the Commission lacked jurisdiction to hear claims arising from the negligent supervision and retention of state employees.

The Claims Commission granted the State's motion and dismissed the complaint for lack of subject matter jurisdiction. The Commission agreed that the prison guard's actions were outside the scope of his employment and that Claimants could proceed with the circuit court action, but denied the motion to transfer as moot.

## II.

On appeal, Claimants challenge the dismissal of their claim for negligent supervision and retention of the prison guard[3] and the denial of the motion to transfer.

---

[1] Ms. Vetrano's husband, Mr. Coggins, asserted a loss of consortium claim.

[2] Claims filed against the State operate as a waiver of any suit against the individual state employee unless the Claims Commission determines that the act or omission was outside the scope of employment. Tenn. Code Ann. § 9-8-307(b).

[3] After the State filed its motion to dismiss, Claimants requested leave to amend their complaint to add a claim for "negligently causing the depravation of Ms. Vetrano's statutory right to be free from Malicious Harassment." Although it granted leave to amend, the Claims Commission determined that it also lacked jurisdiction over the negligent deprivation of statutory rights claim. Claimants do not raise

2

We review the subject matter jurisdiction of the Claims Commission de novo, with no presumption of correctness. *Mullins v. State*, 320 S.W.3d 273, 278 (Tenn. 2010); *Northland Ins. Co. v. State*, 33 S.W.3d 727, 729 (Tenn. 2000).

In Tennessee, "[s]uits may be brought against the State in such manner and in such courts as the Legislature may by law direct." Tenn. Const. art. I, § 17. In 1984, with the enactment of the Tennessee Claims Commission Act (sometimes referred to as the "Act"), the Legislature broadly waived sovereign immunity for specified claims against the State. Tenn. Code Ann. § 9-8-307; *see Lucas v. State*, 141 S.W.3d 121, 129 (Tenn. Ct. App. 2004) ("The Tennessee Claims Commission Act, subject to its monetary cap on recoverable damages, accomplished a sweeping abrogation of sovereign immunity as to the State of Tennessee relative to acts or omissions of state employees."). A successful claimant under the Act is entitled to an award of actual damages and court costs up to a specified monetary limit, but no punitive damages or other litigation costs. Tenn. Code Ann. § 9-8-307(d).

Under the Act, the Claims Commission possesses exclusive jurisdiction over monetary claims against the State based on acts or omissions of state employees that fit within the twenty-three categories described in the statute. Tenn. Code Ann. § 9-8-307(a)(1); *Mullins*, 320 S.W.3d at 278. The State's liability under the Act is determined by reference to "the traditional tort concepts of duty and the reasonably prudent person's standard of care." Tenn. Code Ann. § 9-8-307(c). The State may assert any defenses or absolute common law immunities that would have been available to the state employee except for good faith common law immunity. *Id.* § 9-8-307(d); *see Lucas*, 141 S.W.3d at 142 (holding the Act does not allow the State to assert discretionary function immunity).

State employees enjoy absolute immunity under the Act for acts or omissions within the scope of their employment, "except for" any willful, malicious, or criminal acts or for acts done for personal gain. Tenn. Code Ann. § 9-8-307(h). The State is also not liable "for willful, malicious, or criminal acts by state employees, or for acts on the part of state employees done for personal gain." *Id.* § 9-8-307(d).

Our task, applying the Act to the allegations of Claimants, entails statutory interpretation. *See* Antonin Scalia & Bryan A. Garner, *Reading Law: The Interpretation of Legal Texts* 53 (2012). Thus, our goal is to "ascertain and effectuate the legislature's intent." *Kite v. Kite*, 22 S.W.3d 803, 805 (Tenn. 1997). In this case, the Legislature has directed that "the jurisdiction of the claims commission be liberally construed to implement the remedial purposes of this legislation." Tenn. Code Ann. § 9-8-307(a)(3).

Our supreme court has cautioned, however, that we are not at liberty to create a new category under the guise of liberal construction. *Northland Ins. Co.*, 33 S.W.3d at

---

the dismissal of this additional claim as an issue on appeal.

730; *Stewart v. State*, 33 S.W.3d 785, 791 (Tenn. 2000). In determining whether a claim is within a prescribed category, "we will give a liberal construction in favor of jurisdiction, but only so long as (1) the particular grant of jurisdiction is ambiguous and admits of several constructions, and (2) the 'most favorable view in support of the petitioner's claim' is not clearly contrary to the statutory language used by the General Assembly." *Stewart*, 33 S.W.3d at 791 (quoting *Brady v. Reed*, 212 S.W.2d 378, 381 (Tenn. 1994)).

## A. NEGLIGENT CARE, CUSTODY, AND CONTROL OF PERSONS

Our first task is to determine whether this claim falls within one of the statutory categories for which the Claims Commission possesses exclusive jurisdiction. Here, we are concerned with one category in particular: the "[n]egligent care, custody and control of persons." Tenn. Code Ann. § 9-8-307(a)(1)(E).

According to the complaint, while Ms. Vetrano was an inmate in the Tennessee Prison for Women, she was sexually assaulted by a prison guard, Officer Scott Mepham. Before the assault, Officer Mepham had exhibited other "inappropriate and troubling behavior," and another inmate had filed a formal complaint against Officer Mepham for assault, which was being investigated by the Department of Corrections. Officer Mepham's supervisors "had actual and/or constructive knowledge that Officer Mepham was unfit for the job of corrections officer, and it was reasonably foreseeable that he posed an actual threat of harm to the inmates with [whom] he came in contact." The "inadequate supervision and inappropriate retention of Officer Mepham . . . was a clear breach of the standard of care [the State] owed to Ms. Vetrano, and this negligence in her care, custody, and control was the direct, proximate and legal cause" of her injuries.

Claimants describe their claim as one for the negligent care of a prison inmate, the type of claim often included within this category. *See Stewart*, 33 S.W.3d at 792 (explaining that our courts have previously interpreted this category to include claims for injuries to "persons confined in penal institutions[] . . . maintained by the state"). On the other hand, the State characterizes this claim as one for negligent supervision of a state employee, which arguably does not fit within an existing category, relying on *Byrd v. State*, 150 S.W.3d 414, 420 (Tenn. Ct. App. 2004) (refusing to "stretch the language" in the Claims Commission Act to include a failure to discipline or terminate a physician employee).[4]

---

[4] The State's reliance on *Byrd v. State* is misplaced. In *Byrd*, the alleged injuries were not suffered by persons within the care, custody, and control of the State. Rather, the *Byrd* claimants were the owner and employees of an independent janitorial service who sought to hold the State liable for negligent control of a state employee. *Byrd*, 150 S.W.3d at 416, 420.

4

We conclude that this claim falls within the "[n]egligent care, custody and control of persons" category. *See Stewart*, 33 S.W.3d at 792. Ms. Vetrano was a prison inmate, and "[p]rison officials have a duty to exercise ordinary and reasonable care for the protection of the persons in their custody." *Cockrum v. State*, 843 S.W.2d 433, 436 (Tenn. Ct. App. 1992). Mere proof of injury is insufficient. Inmates must establish that prison officials failed to exercise reasonable care to prevent a foreseeable injury. *Id.* at 438. In this case, Ms. Vetrano alleged that prison officials knew or should have known that Officer Mepham posed a risk of harm to female prison inmates and failed to exercise reasonable care to protect the inmates from a foreseeable injury.

## B. WILLFUL, MALICIOUS, OR CRIMINAL ACTS OF STATE EMPLOYEES

Our conclusion that this claim falls within one of the statutory categories does not end our inquiry, however. The State asserts that it is immune from liability for the willful, malicious, or criminal acts of state employees and that Claimants' negligence theory is simply a back-door attempt to circumvent the State's immunity. *See* Tenn. Code Ann. § 9-8-307(d).

This issue appears to be one of first impression under the Claims Commission Act. While we have previously dismissed complaints based on intentional wrongdoing by state employees, none of our previous cases included a viable negligence claim against the State.[5] *See Bostic v. State*, No. E2011-02590-COA-R3-CV, 2013 WL 23191, at *2 (Tenn. Ct. App. Jan. 2, 2013) (former prison inmate claimed prison officials intentionally failed to help him obtain a place to live upon his release); *Haynie v. State*, No. M2009-01340-COA-R3-CV, 2010 WL 366689, at *2 (Tenn. Ct. App. Feb. 2, 2010) (claimant sought compensation for false imprisonment); *Cavnar v. State*, No. M2002-00609-COA-R3-CV, 2003 WL 535915, at *3 (Tenn. Ct. App. Feb. 26, 2003) (former mental patient alleged willful and malicious conduct by state hospital staff).

The State contends we should affirm the dismissal of the complaint under *Limbaugh v. Coffee Medical Center*, 59 S.W.3d 73 (Tenn. 2001), a case interpreting the Governmental Tort Liability Act (the "GTLA"). *See* Tenn. Code Ann. § 29-20-205 (2012). In *Limbaugh*, the son of a nursing home resident sued the county-owned nursing home and a nursing assistant for damages after the nursing assistant physically assaulted the resident. *Limbaugh*, 59 S.W.3d at 76. Our supreme court held that the nursing home

---

[5] In *Cavnar v. State*, No. M2002-00609-COA-R3-CV, 2003 WL 535915, at *5 (Tenn. Ct. App. Feb. 26, 2003), the plaintiff alleged the State inflicted emotional distress upon his family members. This court agreed that the Claims Commission had jurisdiction over a claim for negligent infliction of emotional distress, but affirmed the dismissal because the plaintiff lacked standing to assert the claim on behalf of his family members. Likewise, in *Haynie v. State*, No. M2009-01340-COA-R3-CV, 2010 WL 366689, at *3 (Tenn. Ct. App. Feb. 2, 2010), this court held that the negligence claims against a judge and a probation officer were barred by the doctrines of judicial and quasi-judicial immunity, respectively.

acted negligently in failing to take reasonable precautions to protect the resident from the foreseeable risk of assault. *Id.* at 81. The court then faced the issue of whether the nursing home retained immunity in spite of its negligence based on the intentional tort exception. *Id.*

The court resolved the immunity issue through application of familiar canons of statutory construction. *Id.* at 83-84. The GTLA waives governmental immunity for injury proximately caused by negligent acts or omissions of government employees "except if the injury arises out of" one of a list of exceptions, including the intentional tort exception. Tenn. Code Ann. § 29-20-205. The court concluded, based on the plain language of the statute, that the nursing home was not immune from liability for its negligence because the torts of assault and battery "are conspicuously absent from the intentional tort exception." *Limbaugh*, 59 S.W.3d at 84; *see* Tenn. Code Ann. § 29-20-205(2).

The majority in *Limbaugh* rejected the argument advanced by Justice Holder in a concurring opinion that "a governmental entity [should] be held liable for its own negligent employment practices regardless of the nature of the underlying acts of its employees." *Limbaugh*, 59 S.W.3d at 88 (Holder, J., concurring). Emphasizing that the GTLA specifically retained immunity for injuries "arising out of" the listed intentional torts and that the statute must be strictly construed, the majority "decline[d] to impose blanket liability on a governmental entity for its negligent employment practices when one of the exceptions immunizing the entity is applicable." *Id.* at 82 n.7 (majority opinion).[6]

Here, we are faced with a significantly different statute. We must liberally construe the sweeping abrogation of sovereign immunity in the Claims Commission Act, a directive in stark contrast to the strict construction applicable to the GTLA. Tenn. Code Ann. § 9-8-307(a)(3); *Stewart*, 33 S.W.3d at 790-91; *Lucas*, 141 S.W.3d at 129. Although the Claims Commission Act specifies that the State's liability cannot be premised on the willful, malicious, or criminal acts of state employees, the Act does not

---

[6] The relevant portion of the GTLA provides:

> Immunity from suit of all governmental entities is removed for injury proximately caused by a negligent act or omission of any employee within the scope of his employment except if the injury arises out of: . . . (2) False imprisonment pursuant to a mittimus from a court, false arrest, malicious prosecution, intentional trespass, abuse of process, libel, slander, deceit, interference with contract rights, infliction of mental anguish, invasion of right of privacy, or civil rights[.]

Tenn. Code Ann. § 29-20-205.

specifically retain immunity for claims that "arise out of or result from" such acts.[7] Tenn. Code Ann. § 9-8-307(d).

The Legislature knows how to use the phrase "arise out of or result from" when that is its intention. Elsewhere in the Act, the Legislature directs that the State will not be held liable for claims "arising out of or resulting from" other acts, not at issue in this case. Tenn. Code Ann. § 9-8-307(a)(2). But similar language is conspicuously absent from subsection (d).

"The entire statutory purpose of the Tennessee Claims Commission Act is to establish the state's liability in tort based on the traditional tort concepts of duty and the reasonably prudent persons' standard of care." *Lucas*, 141 S.W.3d at 130 (citing Tenn. Code Ann. § 9-8-307(c) (Supp. 2003)). As our courts have recognized in other contexts, a defendant may be held liable for failure to exercise reasonable care to prevent a foreseeable intentional act. *See, e.g.*, *McClung v. Delta Square Ltd. P'ship*, 937 S.W.2d 891, 899 (Tenn. 1996) (holding businesses have duty to protect customers from foreseeable criminal attacks); *McClenahan v. Cooley*, 806 S.W.2d 767, 776 (Tenn. 1991) (agreeing that negligent car owner could be potentially responsible for injuries to plaintiff caused by car thief).

Allowing Claimants to proceed with their negligence claim under the facts alleged here achieves the statutory goal of providing a remedy for negligent acts that fall within a specified category without holding the State liable for the willful, malicious, or criminal acts of state employees. *See Carver v. Citizen Utils. Co.*, 954 S.W.2d 34, 35 (Tenn. 1997) ("Our goal is to adopt a reasonable construction which avoids statutory conflict and provides for harmonious operation of the laws."). To prevail on her claim, Ms. Vetrano must establish that the prison officials' negligence proximately caused a foreseeable injury. *See Brown v. Christian Bros. Univ.*, 428 S.W.3d 38, 56 (Tenn. Ct. App. 2013) (explaining that a claim for negligent supervision of an employee requires proof of negligence and "that the employer had knowledge of the employee's unfitness for the job"). If she cannot prove all elements of her negligence claim, the State will not be held liable even if Officer Mepham committed the sexual assault.

---

[7] This distinction between the two statutes makes our holding in *Autry v. Hooker*, 304 S.W.3d 356, 361 (Tenn. Ct. App. 2009), inapplicable as well. In *Autry*, another GTLA case, we rejected the argument that a school district could be held liable for intentional misconduct of an employee "if the intentional misconduct could reasonably have been foreseen by the entity, and the governmental entity fails to protect the plaintiff from that foreseeable risk." *Id.* Because the GTLA specifically retained immunity for injuries that arose out of civil rights violations, we held that summary judgment in favor of the school district was appropriate. *Id.* at 364.

7

## III.

For the foregoing reasons, we reverse the Tennessee Claims Commission's judgment dismissing the complaint for lack of subject matter jurisdiction. This cause is remanded for a determination of whether the claim against the State should be transferred to circuit court and for any further proceedings, consistent with this opinion, that may be necessary.

_____

W. NEAL McBRAYER, JUDGE