# IN THE COURT OF APPEALS OF TENNESSEE
## AT NASHVILLE
### March 14, 2018 Session

## DAVID R. FITZGERALD v. HICKMAN COUNTY GOVERNMENT, ET AL.

**Appeal from the Circuit Court for Hickman County**
**No. 16CV-2  Joseph Woodruff, Judge**

_____

### No. M2017-00565-COA-R3-CV

_____

Former county employee appeals the dismissal of his claims against the county and the county mayor related to the termination of his employment. In his complaint, the employee raised claims of violations of due process, indemnification, restitution, negligence, invasion of privacy, workplace harassment, intentional infliction of emotional distress, and misrepresentation.  After the county and county mayor filed a motion to dismiss, the trial court ruled that it would decide the motion without the benefit of a hearing. The trial court eventually dismissed all the claims; some claims, however, were dismissed on the basis of summary judgment after the trial court considered a county personnel manual. We conclude that the trial court was entitled to consider the personnel manual as part of the pleadings for purposes of the motion to dismiss under Rule 10.03 of the Tennessee Rules of Civil Procedure. Consequently, we affirm the dismissal of all claims raised by the employee under the motion to dismiss standard, with the exception of the employee's claim against the county mayor for false light invasion of privacy. Affirmed in part, reversed in part, and remanded.

**Tenn. R. App. P. 3 Appeal as of Right; Judgment of the Circuit Court Affirmed in Part; Reversed in Part; and Remanded**

J. STEVEN STAFFORD, P.J.,W.S., delivered the opinion of the court, in which FRANK G. CLEMENT, JR., P.J., M.S., and W. NEAL MCBRAYER, J., joined.

Robin C. Moore, Carthage, Tennessee, for the appellant, David R. Fitzgerald.

Michael T. Schmitt, Nashville, Tennessee, for the appellees, Hickman County, Tennessee, and Mayor of Hickman County, Shaun Lawson.

# OPINION

## Background

Appellant David R. Fitzgerald ("Appellant") filed a complaint in 2016 against Appellees Hickman County Government ("Hickman County") and the Hickman County Mayor, Shaun Lawson ("Mayor Lawson," and together with Hickman County, "Appellees"). The complaint alleged violations of due process, claims for indemnification and restitution, negligence, invasion of privacy, workplace harassment, intentional infliction of emotional distress, and intentional and negligent misrepresentation. The complaint was later amended to clarify the parties and to omit a prior claim under the Open Meetings Act.[1] We summarize the facts from Appellant's complaint, which will be more fully discussed *infra*.

According to the amended complaint, Appellant had been employed by Hickman County since 1999. In 2015, he served as Emergency Management Director, as he had been hired under Hickman County's previous mayor. Sometime following the election of Mayor Lawson, however, Appellant alleged that Appellees, chiefly through the actions of Mayor Lawson, subjected Appellant to a continuing course of unlawful, malicious, and retaliatory conduct that destroyed his reputation and forced a "constructive discharge" from his employment. As early as December 2, 2014, Appellant states that rumors began to surface that Mayor Lawson intended to terminate Appellant's employment. Although Appellant contends that Mayor Lawson assured him that the rumors regarding termination were untrue, on January 6, 2015, Mayor Lawson removed Appellant from his position, citing what Appellant describes as "bogus complaints" by disgruntled employees.[2]

After Appellant was provided notice of his termination, but while he was still employed with Hickman County,[3] Appellant attempted to participate in the Hickman County Grievance Procedure ("Grievance Procedure") as outlined by the Hickman County Personnel Policies and Procedures Manual ("Personnel Manual"). Eventually on January 26, 2015, Mayor Lawson sent Appellant a letter stating that after "careful thought and review," Appellant's grievance claim had been denied. Appellant alleged, however, that the proper procedure was not followed and he was deprived of a hearing before the Grievance Committee. In support of this assertion, Appellant cited portions of the Personnel Manual; the entirety of the handbook, however, was not appended to

---

[1] For example, the Hickman County Attorney ("County Attorney") was also named as a defendant but was later dismissed and is not at issue in this appeal.

[2] In particular, Appellant alleged that he had issued a written reprimand to one of his subordinates for failing to follow his instructions. Appellant alleged, however, that this employee was a close friend of Mayor Lawson and that the employee's husband was later hired to fill the Emergency Management Director position after Appellant's employment was terminated.

[3] According to Appellant, although he was notified of the termination of his employment on January 6, 2015, he continued in that position until January 16, 2015.

- 2 -

Appellant's complaint. Following the termination of Appellant's employment as Emergency Management Director, Appellant asserted that Hickman County hired a new director who was not qualified for the position pursuant to legal requirements.

Appellant further alleged that at the time of the termination of his employment Mayor Lawson promised him that Hickman County would create a new job for him, albeit at a substantially lower salary; the job was never created after the Hickman County Commission ("County Commission") determined that it could not afford to fund the new position. Appellant thereafter took a job with the Hickman County Sheriff's Department ("Sheriff's Department").[4] Later, after certain public statements were made by Mayor Lawson and the County Attorney regarding an alleged extramarital affair by Appellant and allegations that Appellant had improperly received certain compensation in his final payment as Emergency Management Director, Appellant alleged that he was forced to resign "from his full-time position with the Sheriff's Department."[5]

Appellees filed a motion to dismiss the complaint, asserting governmental immunity and failure to state a claim upon which relief could be granted. In support of their motion, Appellees attached the entirety of the Personnel Manual. On July 1, 2016, the trial court ordered Appellant to file a reply brief and ruled that it would decide the motion "on the papers."

On or about August 26, 2016, the trial court issued its ruling dismissing all of the claims against Appellees. First, the trial court ruled that Hickman County was immune from suit with regard to the claims of violations of due process (Count 1), invasion of privacy (Counts 4 & 5), intentional infliction of emotional distress (Count 6), workplace harassment (Count 7), and intentional and negligent misrepresentation (Counts 8 & 9). As such, the trial court dismissed these Counts under Rule 12.02(6). With regard to the violations of due process allegations against Mayor Lawson, the trial court ruled that Appellant's allegation that he was deprived of a property interest in his employment was incorrect because the Personnel Manual stated that he was an "at-will" employee; as such, the trial court granted summary judgment on this claim.

With regard to Appellant's indemnification and restitution claims (Count 2), the trial court ruled that Appellant had no contractual right to use Hickman County's grievance procedure after his employment was terminated, due to his at-will employment status; thus, summary judgment was granted as to this Count. The trial court also found that Appellant failed to establish a contract for future employment, as the trial court found no facts alleged showing mutual assent to the terms of the contract or acceptance of the contract; thus, this dismissal was also based upon Rule 12.02(6).

---

[4] In his complaint, Appellant stated that this employment began as part-time employment but was later upgraded to full-time employment.

[5] In his later motion to alter or amend, Appellant alleged that he was still employed by the Sheriff's Department part-time.

With regard to Appellant's negligence claim (Count 3), in which Appellant alleged that Appellees were negligent in hiring his successor, the trial court ruled that Appellant's complaint failed to contain any specific averments that Appellant was harmed by the alleged negligence or that Appellees owed a duty specifically to Appellant in this regard and that Appellant lacked standing to bring such a claim. Finally, the trial court ruled that Mayor Lawson could only be liable for the allegations against him if his actions were malicious, criminal, or performed for personal gain. The trial court considered each remaining count and concluded that Appellant's complaint failed to contain specific allegations to support all of the elements of each claim or that the facts alleged did not amount to willful or malicious conduct so as to allow liability. The trial court later partially granted a motion to alter or amend to include additional factual averments and then entered another order awarding attorney's fees. From these orders, Appellant appeals.[6]

### Issues Presented

Appellant raises two issues, which are taken from his brief:

1.      Whether the trial court erred by dismissing Appellant's complaint by granting summary judgment in favor of Appellees on Counts One and Two of the Amended Complaint, sua sponte and without notice and without either party conducting any discovery.

2.      Whether Appellant's complaint stated a claim for relief.

### Discussion

### I.

As an initial matter, the parties disagree as to whether the trial court correctly converted certain matters to issues of summary judgment by relying on the Personnel Manual. Specifically, Appellees assert that the trial court was not required to convert the motion to one for summary judgment by relying on the Personnel Manual because this document was required to be appended to Appellant's complaint pursuant to Rule 10.03 of the Tennessee Rules of Civil Procedure. Appellant asserts, however, that summary judgment was the correct standard but that the trial court should not have granted summary judgment prior to allowing full discovery.

Under Rule 10.03 of the Tennessee Rules of Civil Procedure,

---

[6] While this appeal was pending, Appellant filed a motion for remand to the trial court for the adjudication of a motion under Rule 60.02 of the Tennessee Rules of Civil Procedure. The trial court eventually denied the motion; the denial of Appellant's Rule 60.02 motion has not been raised as an issue in this appeal.

- 4 -

> Whenever a claim or defense is founded upon a written instrument other than a policy of insurance, a copy of such instrument or the pertinent parts thereof shall be attached to the pleading as an exhibit unless the instrument is (1) a matter of public record in the county in which the action is commenced and its location in the record is set forth in the pleading; (2) in the possession of the adverse party and this fact is stated in the pleading; (3) inaccessible to the pleader or is of such nature that attaching the instrument would be unnecessary or impracticable and this fact is stated in the pleading, together with the reason therefor. Every exhibit so attached or referred to under (1) and (2) shall be a part of the pleading for all purposes.

Tenn. R. Civ. P. 10.03. Here, Appellant specifically cited portions of the Personnel Manual in his amended complaint in support of his argument that an implied contract existed that entitled him to relief. Thus, the Personnel Manual clearly falls within the purview of Rule 10.03. Not included in the cited portions contained in Appellant's amended complaint, however, were portions of the Personnel Manual stating that Appellant was an at-will employee. The relevant portions of the Personnel Manual were included in Appellees' motion to dismiss, and the entirety of the Personnel Manual was appended to Appellees' motion. Additionally, in his reply brief, Appellant specifically concedes that the Personnel Manual provides that he is an at-will employee.

In a similar situation, we have held that "a plaintiff should not be entitled to avoid a motion to dismiss in reliance upon Rule 10.03 exhibits by simply shirking its duty to properly attach such exhibits." *Belton v. City of Memphis*, No. W2015-01785-COA-R3-CV, 2016 WL 2754407, at \*4 (Tenn. Ct. App. May 10, 2016). Appellant cannot rely on certain portions of the Personnel Manual in support of his claims in partial compliance with Rule 10.03 while insisting that other, undisputed portions of the same document be excluded from our review. We therefore consider the entirety of the Personnel Manual as an exhibit under Rule 10.03. Where documents are required to be attached to a complaint in conformity with Rule 10.03, consideration of those documents by the trial court does not convert a motion to dismiss to a motion for summary judgment. *See Samick Music Corp. v. Hoy*, No. M2008-00441-COA-R3-CV, 2008 WL 4682216, at \*1 (Tenn.Ct.App. Oct. 22, 2008) ("A trial court should review only the complaint, and any exhibits attached in accordance with Tenn. R. Civ. P. 10.03, when considering a motion to dismiss, and matters outside the pleadings should not be considered.") (emphasis added) (citing *Trau-Med of America, Inc. v. Allstate Ins. Co.*, 71 S.W.3d 691, 696 (Tenn. 2002)); *Marceaux v. Thompson*, 212 S.W.3d 263, 266 (Tenn. Ct. App. 2006); *Pendleton v. Mills*, 73 S.W.3d 115, 120 (Tenn. Ct. App. 2001)). Thus, the trial court was entitled to rule on Appellant's claims pursuant to the Rule 12.02(6) standard, notwithstanding the consideration of the Personnel Manual. Any argument that Appellant was entitled to discovery because of the nature of summary judgment is therefore unavailing.[7]

---

[7] We note that when the trial court entered its order stating that it would decide the motion to

We therefore proceed to consider whether Appellant's complaint was properly dismissed for failure to state a claim. As the Tennessee Supreme Court explained:

> A Rule 12.02(6) motion to dismiss only seeks to determine whether the pleadings state a claim upon which relief can be granted. Such a motion challenges the legal sufficiency of the complaint, not the strength of the plaintiff's proof . . . . ***Bell ex rel. Snyder v. Icard, Merrill, Cullis, Timm, Furen & Ginsburg, P.A.***, 986 S.W.2d 550, 554 (Tenn. 1999). In reviewing a motion to dismiss, the appellate court must construe the complaint liberally, presuming all factual allegations to be true and giving the plaintiff the benefit of all reasonable inferences. *See **Pursell v. First Am. Nat'l Bank***, 937 S.W.2d 838, 840 (Tenn.1996). It is well-settled that a complaint should not be dismissed for failure to state a claim unless it appears that the plaintiff can prove no set of facts in support of his or her claim that would warrant relief. *See **Doe v. Sundquist***, 2 S.W.3d 919, 922 (Tenn. 1999); ***Fuerst v. Methodist Hosp. S.***, 566 S.W.2d 847, 848 (Tenn. 1978). Great specificity in the pleadings is ordinarily not required to survive a motion to dismiss; it is enough that the complaint set forth "a short and plain statement of the claim showing that the pleader is entitled to relief." ***White v. Revco Disc. Drug Ctrs., Inc.***, 33 S.W.3d 713, 718 (Tenn. 2000) (citing Tenn. R. Civ. P. 8.01).

***Trau-Med***, 71 S.W.3d at 696–97. Thus, "[a] complaint 'need not contain in minute detail the facts that give rise to the claim,' so long as the complaint does 'contain allegations from which an inference may fairly be drawn that evidence on these material points will be introduced at trial.'" ***Givens v. Mullikin ex rel. Estate of McElwaney***, 75 S.W.3d 383, 399 (Tenn. 2002) (quoting ***Trau-Med***, 71 S.W.3d at 725). The trial court's decision to grant a motion to dismiss is reviewed de novo with no presumption of correctness. ***Trau-Med***, 71 S.W.3d at 697.

## II.

Next, we consider the issues of immunity raised by this case. Here, there is no dispute that Hickman County is a governmental entity within the province of the Tennessee Governmental Tort Liability Act ("TGTLA"), Tennessee Code Annotated section 29-20-101, *et seq*. Section 29-20-201(a) provides that "all governmental entities shall be immune from suit for any injury which may result from the activities of such governmental entities wherein such governmental entities are engaged in the exercise and discharge of any of their functions, governmental or proprietary," except as provided by the TGTLA. Relevant to this appeal, the TGTLA provides

---

dismiss "on the papers" Appellant raised no written objection and did not seek discovery. Moreover, although Appellant raises as an issue in his brief the lack of discovery, Appellant's brief is largely skeletal on this issue.

a general waiver of immunity from suit for personal injury claims . . . "for injury proximately caused by a negligent act or omission of any employee within the scope of his employment," unless the injury arises out of one of several enumerated exceptions to this section, such as the intentional tort exception. Specifically, this exception bars claims for injuries arising out of "false imprisonment pursuant to a mittimus from a court, false arrest, malicious prosecution, intentional trespass, abuse of process, libel, slander, deceit, interference with contract rights, infliction of mental anguish, invasion of right of privacy, or civil rights." Tenn. Code Ann. § 29-20-205(2).

***Limbaugh v. Coffee Med. Ctr.***, 59 S.W.3d 73, 79 (Tenn. 2001). In addition to the intentional torts enumerated in section 29-20-205(2), the section also provides that immunity is not waived when the injury arises out of "[m]isrepresentation by an employee whether or not such is negligent or intentional[.]" Tenn. Code Ann. § 29-20-205(6).

Here, several of the claims against Hickman County clearly fall within the "intentional tort exception" to the immunity waiver, specifically Appellant's claims for violations of due process, intentional infliction of emotional distress, and the claims for invasion of privacy, both intrusion on seclusion and false light. *See **Sallee v. Barrett***, 171 S.W.3d 822, 829 (Tenn. 2005) (holding that intentional infliction of emotional distress is encompassed in "infliction of mental anguish"). Likewise, section 29-20-205(6) clearly provides that Hickman County retains immunity for Appellant's claims involving negligent and intentional misrepresentation. Although it is somewhat difficult to discern from Appellant's brief, it appears that Appellant is arguing that Hickman County does not enjoy immunity where the actions of its employees were willful, wanton, or malicious, citing Tennessee Code Annotated sections 29-20-201 and 29-20-310. Respectfully, we do not agree.

Section 29-20-201(b)(2) provides

All **members** of boards, commissions, agencies, authorities, and other governing bodies of any governmental entity, created by public or private act, whether compensated or not, shall be immune from suit arising from other governing body. Such immunity from suit shall be removed when such conduct amounts to willful, wanton, or gross negligence.

(Emphasis added). Clearly, the plain language of this statute provides that immunity will not extend to the "members" of governmental entities who act in willful, wanton, or grossly negligent manners. Based upon this statute, we have previously held that "[l]ocal governmental officials are not immune from suit for willful or wanton acts or acts amounting to gross negligence." ***Moore Const. Co. v. Story Eng'g Co.***, No. 01A01-9606-

CV-00267, 1998 WL 382198, at *4 (Tenn. Ct. App. July 10, 1998). The same is true of section 29-20-310(c), which provides in relevant part

> No claim may be brought against **an employee** or judgment entered against **an employee** for injury proximately caused by an act or omission of the employee within the scope of the employee's employment for which the governmental entity is immune in any amount in excess of the amounts established for governmental entities in § 29-20-403, unless the act or omission was willful, malicious, criminal, or performed for personal financial gain, . . . .

(Emphasis added) (noting other exceptions in the health care context). Again, section 29-20-310(c) concerns only the liability of employees. As such, this Court has previously held that "this section [i.e. section 29-20-310(c)] has nothing to do with the county's liability." *Erwin v. Rose*, 980 S.W.2d 203, 205 (Tenn. Ct. App. 1998) (cited favorably in *Hill v. City of Germantown*, 31 S.W.3d 234, 238 (Tenn. 2000)).

Appellant has cited no caselaw wherein any Tennessee court has held that a county's immunity as specifically enumerated under section 29-20-205 may be removed where an employee acts in a willful or malicious manner. Our research has revealed at least once case that rejected a similar argument. In *Autry v. Hooker*, 304 S.W.3d 356 (Tenn. Ct. App. 2009), we held that an allegation that the defendant's conduct was willful, wanton or the product of gross negligence was not sufficient to allow waiver of immunity for the specifically enumerated tort of intentional infliction of emotional distress. *Id.* at 364. Because the governmental entity remained immune from suit, the individual defendants who had been sued only in their official capacities were also immune. *Id.* ("'Official-capacity' suits are in essence another way of pleading an action against the entity represented by the individual defendant."). Thus, allegations that the conduct of employees was willful or wanton were not sufficient to remove immunity either for the governmental entity or the individual defendants who were sued solely in their official capacities. As such, we affirm the trial court's decision that Hickman County is immune from all claims relating to due process, intentional infliction of emotional distress, invasion of privacy, both intrusion on seclusion and false light, and negligent and intentional misrepresentation, regardless of whether Mayor Lawson or other county employees acted willfully or maliciously.

The trial court also found that Hickman County was immune from suit regarding Appellant's claim for workplace harassment, apparently based upon the determination that workplace harassment is an intentional tort. We note, however, that workplace harassment is not specifically enumerated among the intentional torts for which immunity is not removed in section 29-20-205. The Tennessee Supreme Court has previously held that where an intentional tort is not specifically enumerated in section 29-20-205(2), the governmental entity may still be liable for its negligent failure to prevent its employees from committing the intentional tort. *See **Limbaugh v. Coffee Med. Ctr.***, 59 S.W.3d 73,

84 (Tenn. 2001) ("[W]e hold that section 29-20-205 of the GTLA removes immunity for injuries proximately caused by the negligent act or omission of a governmental employee except when the injury arises out of only those specified torts enumerated in subsection (2)."); *see also* **Hughes v. Metro. Gov't of Nashville & Davidson Cty.**, 340 S.W.3d 352, 368–69 (Tenn. 2011) (holding that in order to hold a governmental entity liable for the intentional tort of its employee not specifically enumerated in section 29-20-205, the plaintiff must include a "showing of negligence by the governmental entity in supervision of one of its employees acting within the scope of employment"). The trial court therefore erred in holding that Hickman County was completely immune from suit with regard to this tort.[8]

Because Hickman County is not immune with regard to workplace harassment, however, we must conclude that Mayor Lawson is immune from suit. In **Hill v. City of Germantown**, 31 S.W.3d 234 (Tenn. 2000), this Court held that where the governmental entity's immunity is removed, no claim may lie as to an individual employee. **Id.** at 238 ("[T]he City's immunity has been removed and Plaintiffs may recover . . . against the City. Accordingly, no judgment may be rendered against [the individual employee]."). Rather, only when the governmental entity is immune may the employee be sued under the provisions of section 29-20-310(c). Here, although Hickman County can only be liable for the damages that result from its negligence in allowing workplace harassment to take place, discussed in detail *infra*, Hickman County's immunity has been removed with regard to this claim. *See **id.*** (noting that a limitation on damages would not affect this analysis as immunity is "from claim or suit" not merely from damages). In this instance, Appellant cannot rely on section 29-20-310(c) to sue Mayor Lawson in his individual capacity.[9]

The same is not true, however, of Appellant's claims regarding restitution and indemnification. Rather, these claims are not generally considered tort claims and therefore are not governed by the TGTLA. *See **Simpson v. Sumner Cty.***, 669 S.W.2d 657, 662 (Tenn. Ct. App. 1983) ("If the complaint is for breach of contract, express or implied, the Tennessee Governmental Tort Claims Act has no application."). As such,

---

[8] We note that the trial court cited a federal opinion in support of its ruling that governmental immunity extends to claims of workplace harassment. *See **Blakely v. City of Clarksville**, 244 F. App'x 681, 683 (6th Cir. 2007) (dismissing the claim for workplace harassment on the basis of immunity). In the first instance, federal opinions interpreting Tennessee law are not controlling on this Court. *See **Townes v. Sunbeam Oster Co., Inc.**, 50 S.W.3d 446, 452 (Tenn. Ct. App. 2001) ("When a federal court undertakes to decide a state law question . . . the state courts are not bound to follow the federal court's decision."). Additionally, the defendant in **Blakely** asserted that, in order to bring the claim in federal court, the workplace harassment claim must have "arise[n] out of a violation of civil rights[.]" Brief for Appellant, at 37, Blakely v. City of Clarksville (6th Cir.) (No. No. 06-5372), 2007 WL 2425448. The same is not true in this case.

[9] By the same token, because Hickman County's immunity has been removed with regard to Appellant's claim for negligence, Appellant cannot sue Mayor Lawson for this claim. We note, however, that Appellant concedes this claim on another basis.

there is no immunity to either Hickman County or Mayor Lawson with regard to these claims.

In sum, Hickman County lacks immunity from suit with regard to the claims of restitution and indemnification, negligence, and workplace harassment. As noted above, in addition to the claims against Hickman County and Mayor Lawson in his official capacity, Mayor Lawson was also named as a party in his individual capacity. Under section 29-20-310(c), an employee of a governmental entity may be held liable for his or her actions where: (1) the governmental entity is immune; and (2) the employee's conduct was "willful, malicious, criminal, or performed for personal financial gain" Tenn. Code Ann. § 29-20-310(c); *see also* **Hill**, 31 S.W.3d at 238; **Autry v. Hooker**, 304 S.W.3d 356, 363 (Tenn. Ct. App. 2009) ("An individual employee of a governmental entity is immune when the governmental entity for which he works is immune from suit, unless the employee's act or omission was willful, malicious, criminal, or performed for personal financial gain."). Appellant alleged in his complaint that all actions taken by Mayor Lawson were willful, malicious, or performed for personal gain. Again, we take the allegations of the complaint as true for purposes of Appellees' motion to dismiss. *See* **Pursell**, 937 S.W.2d at 840. Accordingly, for purposes of Appellees' motion to dismiss, Appellant is correct that the TGTLA does not grant immunity to Mayor Lawson for the individual claims involving due process, intentional infliction of emotional distress, invasion of privacy, both intrusion on seclusion and false light, and negligent and intentional misrepresentation. Likewise, governmental immunity does not bar the claims against Mayor Lawson related to restitution and indemnification. We will therefore proceed to discuss each claim in the order that they were raised in Appellant's amended complaint.

### III.

### Count 1 - Due Process

We begin with Appellant's due process claim against Mayor Lawson in his individual capacity. Here, Appellant alleges in his complaint that he "as a public employee, has a property right in continued employment and cannot be deprived of that property right without due process." In support of his assertion that he has a property right in continued employment, Appellant cited the Grievance Procedure outlined by the Personnel Manual, which outlines a three-step procedure wherein Hickman County employees have "the right to present his/her grievance free from fear, interference, restraint, discrimination, coercion, or reprisal." Appellant notes that while he was still an employee of Hickman County but following notice of the termination of his employment as Emergency Management Director, Appellant requested a grievance against Mayor Lawson. Appellant further asserts in his brief that despite his continued employment by Hickman County, the Grievance Procedure was never followed. As such, Appellant contends that he should be allowed to fully participate in the Grievance Procedure, at which time he will accept the results.

- 10 -

"The threshold consideration with regard to any procedural due process claim is whether the plaintiff has a liberty or property interest that is entitled to protection[.]" **Martin v. Sizemore**, 78 S.W.3d 249, 262 (Tenn. Ct. App. 2001) (citing **Rowe**, 938 S.W.2d at 354; **Armstrong**, 959 S.W.2d at 597–98). "Property interests are not created by the federal constitution. Instead, they are created and defined 'by existing rules or understandings that stem from an independent source such as state law.'" **Rowe**, 938 S.W.2d at 354 (citing **Board of Regents of State Colleges v. Roth**, 408 U.S. 564, 577, 92 S.Ct. 2701, 2709, 33 L.Ed.2d 548 (1972)). Under Tennessee law, however, there is a presumption that an employee is employed at-will. **Rose v. Tipton County Pub. Works Dep't**, 953 S.W.2d 690, 691-92 (Tenn. Ct. App. 1997). "[A]n at-will employee does not have a legitimate entitlement to continued employment. An at-will employee has no entitlement to his or her position and therefore no property interest to be deprived of if he or she is summarily dismissed." **Faulkner v. City of Bartlett**, No. W2008-02225-COA-R3-CV, 2009 WL 1841743, at *4 (Tenn. Ct. App. June 29, 2009) (citing **Lee v. City of LaVergne**, No. M2001-02098-COA-R3-CV, 2003 WL 1610831, at *2 (Tenn. Ct. App. Mar. 28, 2003)).

Here, there can be no dispute that Appellant is an at-will employee. As Appellant admits in his reply brief, the Personnel Manual so heavily relied upon to support this claim states the following:

> The County is an "at will": employer. The county recognizes the right of any employee to terminate his/her services with the County, at his/her will. Likewise, the County may terminate an employee for any reason other than discriminatory or illegal purposes. No policy, benefit, or procedure contained herein, creates an employment contract for any period of time.

Thus, the Personnel Manual makes clear both that Appellant is an "at will" employee and that the Grievance Procedure has no effect on the County's ability to fire Appellant at any time, for any non-illegal or discriminatory reason.[10] Consequently, regardless of whether Appellant requested participation in the grievance process during his employment with Hickman County, that procedure had no effect on Hickman County's ability to terminate Appellant's employment. As such, Appellant simply had no property interest in continued employment that may be vindicated through due process. The trial court therefore correctly dismissed this claim.

### Count 2 - Indemnification and Restitution

We next address Appellant's claims for indemnification and restitution, for which neither Hickman County nor Mayor Lawson have immunity. In support of this claim,

---

[10] We note that Appellant does not allege in his amended complaint that the termination of his employment was based upon discrimination or was otherwise illegal pursuant to applicable law. Rather the only alleged illegality even mentioned by Appellant in his amended complaint involves Appellant's claim of negligence, which is discussed *infra*.

Appellant's amended complaint alleges that Mayor Lawson offered to create a new job for Appellant at a lower salary, as well as provide Appellant's wife, who was also a Hickman County employee, a raise. Likewise, Appellant again asserts that he unsuccessfully attempted to participate in the Grievance Procedure. When neither the promised position was created for Appellant, nor the Grievance Procedure followed, Appellant asserts that he incurred expenses and pecuniary losses in attempting to enforce the promises made to him. Appellant finally alleged that Mayor Lawson's actions on behalf of Hickman County should have been reasonably expected to induce action or forbearance on Appellant's part and that the contract should be enforced against Appellees.

As an initial matter, we must discuss the state of Appellant's brief with regard to Appellant's claim for indemnification. Rule 27 of the Tennessee Rules of Appellate Procedure governs the contents of briefs to this Court and specifically requires that an appellant's brief contain an argument setting forth "the contentions of the appellant with respect to the issues presented, and the reasons therefor, including reasons why the contentions require appellate relief, with citations to the authorities and appropriate references to the appellate record (which may be quoted verbatim) relied on[.]" Tenn. R. App. P. 27(a)(7). Appellant, however, cites no law of any kind to support his claim for indemnification against Hickman County and Mayor Lawson.

Tennessee courts have repeatedly held that where a party raises an issue, but fails to argue that issue in the body of its appellate brief, "fails to develop an argument in support of [its] contention[,] or merely constructs a skeletal argument, the issue is waived." *Sneed v. Bd. of Prof'l Responsibility of Supreme Court*, 301 S.W.3d 603, 615 (Tenn. 2010). Indeed, it is simply "not the role of the courts, trial or appellate, to . . . construct a litigant's case or arguments for him or her[.]" *Id.*; *see also Nunn v. Tennessee Dep't of Correction*, No. M2016-01518-COA-R3-CV, 2017 WL 4776748, at *31 (Tenn. Ct. App. Oct. 23, 2017) (quoting *Waters v. Farr*, 291 S.W.3d 873, 919 (Tenn. 2009) (Koch, J., concurring in part and dissenting in part) ("Parties must thoroughly brief the issues they expect the appellate court to consider.")). Here, Appellant fails to illuminate in his brief how the actions of either Hickman County or Mayor Lawson specifically entitle him to a claim for indemnification. In the absence of a properly supported appellate argument on this claim, we will not address it. The trial court's decision to dismiss Appellant's claim for indemnification against both Hickman County and Mayor Lawson is therefore affirmed.

Appellant's argument with regard to restitution in his initial brief is largely no better—no relevant authority is cited in Appellant's initial brief in support of his contention that the trial court erred in dismissing this claim. Although reply briefs are not substitutes for initial briefs, we note that Appellant does cite some authority to support his restitution claim in his reply brief. *See Adler v. Double Eagle Properties Holdings, LLC*, No. W2014-01080-COA-R3-CV, 2015 WL 1543260, at *6 (Tenn. Ct. App. Apr. 2, 2015), *perm. app. denied* (Tenn. Aug. 13, 2015) ("[A] reply brief simply is not a

substitute for an initial brief to this Court."); ***Owens v. Owens***, 241 S.W.3d 478, 499 (Tenn. Ct. App. 2007) (citing Tenn. R. App. P. 27(c)) ("A reply brief is a response to the arguments of the appellee. It is not a vehicle for raising new issues."). Regardless, we conclude that that this claim likewise fails. As we perceive it, Appellant is essentially arguing that the Grievance Procedure created an implied contract that was enforceable against Hickman County and Mayor Lawson.[11] We do not agree. In the main case cited by Appellant in support of this argument, ***Graves v. Anchor Wire Corp. of Tennessee***, 692 S.W.2d 420 (Tenn. Ct. App. 1985), the plaintiff also argued that an employee handbook created an implied contract that modified her employment "at will" status. ***Id.*** at 422. The court rejected that contention, holding that, even assuming that the employee handbook created an implied contract, nothing in the contract modified the plaintiff's employment "at will" status. ***Id.*** The Court noted that it had previously considered employee handbooks as creating an implied contract with regard to the retention of certain benefits that were unrelated to termination. ***Id.*** (citing ***Hamby v. Genesco, Inc.***, 627 S.W.2d 373 (Tenn. Ct. App. 1981) (involving a claim not related to termination of "at-will" employment)). In the termination context, however, where there is no definite term of employment within even the implied contract, the "at will" employment doctrine applies and the employee may be terminated at any time and for any reason. ***Id.***

The same is true in this case: Appellant is undisputedly an "at will" employee and nothing in the Grievance Procedure creates an implied contract that negates his "at will" status. In fact, unlike in ***Graves***, the Personnel Manual goes further to specifically state that none of the procedures contained therein affect Hickman County's ability to terminate its employees at any time and for any non-discriminatory reason. As we have previously explained:

> In order to constitute a contract, however, the handbook must contain specific language showing the employer's intent to be bound by the handbook's provisions. ***Smith v. Morris***, 778 S.W.2d at 858. Unless an employee handbook contains such guarantees or binding commitments, the handbook will not constitute an employment contract. ***Whittaker v. Care-More, Inc.***, 621 S.W.2d 395, 397 (Tenn. App. 1981). As stated by one court, in order for an employee handbook to be considered part of an

---

[11] In his brief, Appellant also briefly references Mayor Lawson's alleged promise to create a new position for Appellant, which was raised as a basis for an implied contract in Appellant's amended complaint. After fully reviewing Appellant's initial brief and reply brief, it is clear that Appellant's legal argument on appeal is based upon the Grievance Procedure, rather than the alleged promise. For example, Appellant states in his initial brief that "regardless of whether [] Appellant accepted the new position . . . , [] Appellant is entitled [to] a grievance hearing." In his reply brief, Appellant further states that he "is simply looking to be restored to the position he was in, which is one in which he is entitled to a grievance." Although Appellees discuss in their brief implied-in-fact and implied-in-law contracts with regard to the alleged promise of future employment, Appellant does not raise these issues in his own briefs and he cites no law to support claims under these theories. As such, any argument that the alleged promise created an implied contract is waived. *See **Sneed***, 301 S.W.3d at 615.

employment contract, "the language used must be phrased in binding terms, interpreted in the context of the entire handbook, and read in conjunction with any other relevant material, such as an employment application." ***Claiborne v. Frito-Lay, Inc.***, 718 F.Supp. 1319, 1321 (E.D.Tenn. 1989).

***Rose v. Tipton Cty. Pub. Works Dep't***, 953 S.W.2d 690, 692 (Tenn. Ct. App. 1997), holding modified by ***Reed v. Alamo Rent-A-Car, Inc.***, 4 S.W.3d 677 (Tenn. Ct. App. 1999) (holding that while it is generally true that "an employer's reservation of a unilateral right to modify the provisions of its employee handbook generally precludes the handbook from being considered part of the parties' employment contract," that rule will not apply where the handbook contains "unequivocal language demonstrating its intent to be bound by the handbook's provisions"). Given that the Personnel Manual specifically states that the procedures granted to employees therein would not alter their "at will" employment status, we cannot conclude that the Personnel Manual's Grievance Procedure creates an enforceable promise that trumps Hickman County's undisputed right to terminate Appellant's employment "at will." As such, the Grievance Procedure offers Appellant no remedy in this case. The trial court therefore did not err in dismissing this claim against both Hickman County and Mayor Lawson.

### Count 3- Negligence

Although Appellant concedes that the trial court correctly dismissed his claims against Mayor Lawson sounding in negligence, Appellant asserts that the trial court incorrectly dismissed his negligence claim against Hickman County. Having thoroughly reviewed Appellant's brief on this claim, we must conclude that this argument is waived. Here, Appellant's initial brief to this Court contains the following argument concerning Appellant's negligence claim against Hickman County: "The trial court determined that Hickman County was immune, for reasons discussed hereinabove, the Appellant respectfully disagrees and asks this Court to remand this cause to the trial court to conduct discovery and to set for a full and final hearing on the merits." Neither references to the record nor any citations to legal authority are included in Appellant's argument on this issue. Moreover, the trial court did not rule that Hickman County was immune from suit with regard to Appellant's negligence claim, but ruled that the claim failed due to lack of standing and lack of duty. As such, we must conclude that Appellant's argument is completely non-responsive to the actual issue on appeal with regard to this claim.

We note that, like Appellant's restitution argument, Appellant's argument with regard to negligence is more fully set forth in Appellant's reply brief. As we noted above, however, deficiencies in initial briefs may not be corrected in reply briefs. ***Withers v. Withers***, No. W2016-01663-COA-R3-CV, 2018 WL 625119, at *2 n.2 (Tenn. Ct. App. Jan. 30, 2018). In reaching this result, we held that to do so would be unfair because the appellee may have no opportunity to respond. ***Id.*** (citing ***Denver Area Meat Cutters & Emp'rs Pension Plan v. Clayton***, 209 S.W.3d 584, 594 (Tenn. Ct. App. 2006) (holding that permitting an appellant to advance new arguments in a reply brief not addressed in

- 14 -

the initial brief "would be fundamentally unfair as the appellee may not respond to a reply brief."). Here, Appellant's initial brief is not merely somewhat deficient, but completely devoid of argument responsive to the trial court's decision in this case. As noted above, skeletal arguments are insufficient to preserve issues on appeal. *Sneed*, 301 S.W.3d at 615 (Tenn. 2010). Under these circumstances, we conclude that any argument that the trial court erred in dismissing Appellant's negligence claim against Hickman County is waived. The trial court therefore did not err in dismissing this claim.

### Count 4 - Invasion of Privacy: Intrusion on Seclusion

We next consider Appellant's assertion that the trial court erred in dismissing his claim against Mayor Lawson for invasion of privacy based upon intrusion on seclusion. In support of this claim, Appellant alleged in his amended complaint that Appellant suffered objectionable intrusions into his private concerns by Mayor Lawson and the County Attorney when Appellant's "personal and privileged attorney correspondence between [Appellant's] counsel and [the County Attorney] were made part of the County's public record[.]"

The Tennessee Supreme Court has outlined the elements of the tort of intrusion on seclusion as follows:

> Because a plaintiff cannot seek damages for intrusion into seclusion when he or she is required to make the allegedly private information available for public inspection, a plaintiff must allege and prove the following essential elements: (1) that the information sought by the opposing party was not properly discoverable or was otherwise subject to some form of privilege; (2) that the opposing party knew that the information was not discoverable or was subject to privilege, but nevertheless proceeded to obtain that information; (3) that the obtaining of such information would be highly offensive to a reasonable person; and (4) that injury was suffered from the invasion of privacy.

*Givens v. Mullikin ex rel. Estate of McElwaney*, 75 S.W.3d 383, 412 (Tenn. 2002). Despite the Tennessee Supreme Court's pronouncement in 2002, Appellant appears to make a somewhat puzzling argument that this Court should instead apply the analysis from a Tennessee Court of Appeals decision in 2000, which cites the *Restatement (Second) of Torts*. *See Roberts v. Essex Microtel Assocs., II, L.P.*, 46 S.W.3d 205, 211 (Tenn. Ct. App. 2001) (citing *Restatement (Second) of Torts* § 652B). This Court is simply not permitted to deviate from the unequivocal holdings of our supreme court. "The Court of Appeals has no authority to overrule or modify Supreme Court's opinions." *Bloodworth v. Stuart*, 221 Tenn. 567, 572, 428 S.W.2d 786, 789 (Tenn. 1968) (citing *City of Memphis v. Overton*, 54 Tenn.App., 419, 392 S.W.2d 86 (Tenn. 1964)); *Barger v. Brock*, 535 S.W.2d 337, 341 (Tenn. 1976). As such, "[o]nce the Tennessee Supreme Court has addressed an issue, its decision regarding that issue is binding on the

lower courts." ***Morris v. Grusin***, No. W2009-00033-COA-R3-CV, 2009 WL 4931324, at *4 (Tenn. Ct. App. Dec. 22, 2009) (quoting ***Davis v. Davis***, No. M2003-02312-COA-R3-CV, 2004 WL 2296507, at *6 (Tenn. Ct. App. Oct. 12, 2004)). Thus, we apply the elements of intrusion on seclusion as outlined by our supreme court. We note, however, that the ***Givens*** court cited both our decision in ***Roberts*** and the *Restatement (Second) of Torts* favorably with regard to the definition of this tort. *See **Givens***, 75 S.W.3d at 411–12 (citing both ***Roberts*** and the *Restatement* for the definition of the tort). As such, we are unsure how application of the holding in ***Roberts*** would result in a more favorable outcome in this particular case.

In any event, applying the elements as outlined by the Tennessee Supreme Court in ***Givens***, we agree with the trial court that Appellant has failed to establish a prima facie case of intrusion on seclusion. As noted above, an essential element of intrusion on seclusion is that "the information sought by the opposing party was not properly discoverable or was otherwise subject to some form of privilege[.]" ***Givens***, 75 S.W.3d at 412; *see also Restatement (Second) of Torts* § 652B, cmt. c (1977) ("The defendant is subject to liability under the rule stated in this Section only when he has intruded into a private place, or has otherwise invaded a private seclusion that the plaintiff has thrown about his person or affairs. Thus there is no liability for the examination of a public record concerning the plaintiff, or of documents that the plaintiff is required to keep and make available for public inspection."). Here, the information alleged to have been improperly publicized was correspondence between Appellant's attorney and the County Attorney. Appellant appears to contend that this information was not discoverable because of a claim of attorney-client privilege. Respectfully, we cannot agree.

As we have previously explained,

> The attorney-client privilege "belongs" to the client. ***Smith County Educ. Ass'n v. Anderson***, 676 S.W.2d 328, 333 (Tenn. 1984); ***State v. Parker***, 932 S.W.2d 945, 955 (Tenn.Crim.App.1996). Accordingly, a client may waive the privilege either by communicating in the presence of others who are not bound by the privilege, ***Hazlett v. Bryant***, 192 Tenn. at 257, 241 S.W.2d at 123, or by voluntarily divulging the communication to third parties. ***Taylor v. State***, 814 S.W.2d 374, 377 (Tenn.Crim.App.1991).

***Boyd v. Comdata Network, Inc.***, 88 S.W.3d 203, 213 (Tenn. Ct. App. 2002) (footnote omitted). Here, the alleged information was communicated not solely between Appellant and his attorney, but between Appellant's counsel and the County Attorney. The fact that this communication was "voluntarily divulge[ed]" to a third party defeats any claim of privilege. Because Appellant fails to establish another privilege or reason that information communicated to a county attorney by his attorney could not be communicated to county officials, we affirm the trial court's decision that Appellant's amended complaint, even if taken as true, fails to establish a prima facie case for invasion of privacy based upon intrusion on seclusion.

## Count 5 - Invasion of Privacy – False Light

Appellant next asserts that the trial court erred in dismissing his false light claim against Mayor Lawson. In his amended complaint, Appellant alleged that Appellees "falsely represented to the County Commission, and ultimately to the people of Hickman County, that [Appellant] engaged in inappropriate conduct by allegedly claiming "comp time" on his final paycheck as Director, when, in fact, [Appellant] did nothing more than follow County policy." Specifically, the amended complaint contains the following allegations:

> 134. Inexplicably in September 2015, [Mayor Lawson []] and [the County] Attorney [] launched into another scheme to further tarnish [Appellant's] reputation by claiming [Appellant] had inappropriately "taken a lot of money out the door" by allegedly claiming compensatory time [i.e. comp time] during his employ as Director and on [Appellant's] final paycheck as Director.

> 135. Even though, [Mayor Lawson] said publicly he wasn't accusing anyone of anything, it was clear he insinuated [Appellant] engaged in inappropriate behavior tantamount to theft from the County.

Appellant contended that these statements depicted him "as something or someone that he is not." Finally, as noted above, the amended complaint alleged that all of Mayor Lawson's conduct was performed "maliciously[.]"

In 2001, the Tennessee Supreme Court first recognized the tort of false light invasion of privacy. *See* ***West v. Media Gen. Convergence, Inc.***, 53 S.W.3d 640, 641 (Tenn. 2001). The court defined the tort as

> One who gives publicity to a matter concerning another that places the other before the public in a false light is subject to liability to the other for invasion of his privacy, if

> (a) the false light in which the other was placed would be highly offensive to a reasonable person, and

> (b) the actor had knowledge of or acted in reckless disregard as to the falsity of the publicized matter and the false light in which the other would be placed.

***Id.*** at 643–44.[12] Where the claim involves either a public figure or a matter of public concern, the actual malice standard is applicable. ***Id.*** at 648. Where the actual malice

---

[12] We note that, despite the trial court's interpretation of the tort, the court in ***West*** did not state that the plaintiff was required to show that a duty was owed to him, unlike in a negligence case. *See generally* ***Giggers v. Memphis Hous. Auth.***, 277 S.W.3d 359, 364 (Tenn. 2009) (citing ***McCall v. Wilder***,

standard applies, the "burden is upon plaintiff to show with 'convincing clarity' the facts which make up the 'actual malice.'" ***Trigg v. Lakeway Publishers, Inc.***, 720 S.W.2d 69, 75 (Tenn. Ct. App. 1986). The parties do no dispute for purposes of this appeal that the actual malice standard is applicable.

Mayor Lawson first contends that the trial court correctly dismissed this claim because the statement made by him "is not something that can be proven demonstrably false[.]" This Court has previously held however, that "[l]iteral truth is not . . . a defense in a false light claim[.]" ***Eisenstein v. WTVF-TV, News Channel 5 Network, LLC***, 389 S.W.3d 313, 317 (Tenn. Ct. App. 2012). Rather,

> The facts may be true in a false light claim. However, the angle from which the facts are presented, or the omission of certain material facts, results in placing the plaintiff in a false light. "'Literal accuracy of separate statements will not render a communication "true" where the implication of the communication as a whole was false.' . . . The question is whether [the defendant] made 'discrete presentations of information in a fashion which rendered the publication susceptible to inferences casting [the plaintiff] in a false light.'" ***Santillo v. Reedel***, 430 Pa.Super. 290, 634 A.2d 264, 267 (1993) (citing ***Larsen v. Philadelphia Newspapers, Inc.***, 375 Pa.Super. 66, 543 A.2d 1181 (1988)) (emphasis added). Therefore, the literal truth of the publicized facts is not a defense in a false light case.

***West***, 53 S.W.3d at 645 n.5. Consequently, "the falsehood involved in a false light action 'may consist in dissemination of matters which, while technically true, give an objectionably false impression where the communicator fails to modify the basic statement with amplifying facts which modify the statement to create a less objectionable impression corresponding to full reality.'" ***Eisenstein v. WTVF-TV, News Channel 5 Network, LLC***, 389 S.W.3d 313, 318 (quoting Russell G. Donaldson, Annotation, *False Light Invasion of Privacy-Cognizability and Elements*, 57 A.L.R.4th 22, § 13 (Cum. Supp. 2012)). As such, that the information provided by Mayor Lawson be proven demonstrably false is not necessary to maintain Appellant's claim for false light invasion of privacy.

Mayor Lawson next asserts that the trial court correctly dismissed this claim on the basis that Appellant failed to establish that Mayor Lawson acted knowingly and recklessly when making the alleged statement to the County Commission. As pointed out by Appellant, however, a false light claim does not require that the tortfeasor act knowingly or recklessly, but that the tortfeasor "had knowledge of or acted in reckless disregard as to" the false impression created by his statement. ***West***, 53 S.W.3d at 643–44. Moreover, as we have discussed before, the amended complaint states that, at all

---

913 S.W.2d 150, 153 (Tenn. 1995)) (stating that a duty of care is an essential element to a negligence case).

times, Mayor Lawson acted willfully and maliciously. Mayor Lawson contends, however, that Appellant's allegations "lack [the] 'convincing clarity'" required to make out a false light claim. We agree that this Court has held that a plaintiff cannot survive a motion for summary judgment on the issue of actual malice unless the plaintiff can meet his burden to show with "'convincing clarity' . . . facts from which malice may be inferred." *Lewis v. NewsChannel 5 Network, L.P.*, 238 S.W.3d 270, 283 (Tenn. Ct. App. 2007) (quoting *Trigg*, 720 S.W.2d at 74). Such a showing is not required at the motion to dismiss stage, where we take the allegations in the complaint as true.

Here, giving Appellant's amended complaint all reasonable inferences, Appellant alleges that Mayor Lawson made one or more statements insinuating that Appellant improperly appropriated money from Hickman County following the termination of his employment. These statements were made public at a County Commission meeting. Appellant further asserts that this insinuation was not correct and that it placed Appellant in a false and offensive light. Courts outside our jurisdiction have held that false insinuations regarding theft during employment could support a claim for false light invasion of privacy. *See Wal-Mart Stores, Inc. v. Lee*, 348 Ark. 707, 74 S.W.3d 634 (2002) (affirming a jury verdict finding the defendant guilty of false light invasion of privacy based upon allegations that the plaintiff was a thief). Appellant finally asserts that Mayor Lawson's actions were malicious and willful. Taking these allegations as true and giving the complaint all reasonable inferences, we conclude that the amended complaint makes out a prima facie claim for false light invasion of privacy. The trial court's decision to dismiss this claim against Mayor Lawson is therefore reversed.

Mayor Lawson asserts, however, that the trial court was entitled to dismiss this claim on another basis—legislative immunity. Although this argument was raised in the trial court, Mayor Lawson concedes that the trial court did not address it. Generally, this Court does not decide issues that were not first decided by the trial court. *See In re Adoption of E.N.R.*, 42 S.W.3d 26, 31–32 (Tenn. 2001) (holding that courts "are limited in authority to the adjudication of issues that are presented and decided in the trial courts"); *Dorrier v. Dark*, 537 S.W.2d 888, 890 (Tenn. 1976) ("This is a court of appeals and errors, and we are limited in authority to the adjudication of issues that are presented and decided in the trial courts . . . ."); *Hayes v. City of Memphis*, No. W2014-01962-COA-R3-CV, 2015 WL 5000729, at *10 (Tenn. Ct. App. Aug. 21, 2015) (citing *Copper Basin Fed. Credit Union v. Fiserv Sols., Inc.*, No. E2012-02145-COA-R3-CV, 2013 WL 3421916, at *5 (Tenn. Ct. App. July 3, 2013)) ("Even though this issue was raised at the trial court level, we cannot fully analyze this issue because the trial court did not consider or rule on it."). As such, we will not address this argument in this appeal.

### Count 6 - Intentional Infliction of Emotional Distress

We next consider whether the trial court erred in dismissing Appellant's claim for intentional infliction of emotional distress against Mayor Lawson. In support of this claim, Appellant alleged in his amended complaint that Appellees intentionally or

recklessly committed extreme and outrageous conduct that caused severe emotional distress to Appellant. Specifically, Appellant cited as the outrageous conduct in this case Appellees' decision to terminate Appellant's employment after twenty-six years of service, replacing him with an inferior candidate, offering Appellant a job that was not funded and did not come to fruition, and continuously harassing Appellant by insinuating that Appellant stole from Hickman County.

In order to make out a prima facie case of intentional infliction of emotional distress, the plaintiff must show "the defendant's conduct was (1) intentional or reckless, (2) so outrageous that it is not tolerated by civilized society, and (3) resulted in serious mental injury to the plaintiff." *Rogers v. Louisville Land Co.*, 367 S.W.3d 196, 205 (Tenn. 2012) (citing *Lourcey v. Estate of Scarlett*, 146 S.W.3d 48, 51 (Tenn. 2004)). Here, Mayor Lawson argues that Appellant's amended complaint fails to allege facts sufficient to meet the second requirement—outrageous conduct. We agree.

In order to recover for intentional infliction of emotional distress, the plaintiff must show that the defendant's conduct was "so outrageous that it is not tolerated by civilized society." *Bain v. Wells*, 936 S.W.2d 618, 622 (Tenn. 1998) (citing *Medlin v. Allied Inv. Co.*, 217 Tenn. 469, 479, 398 S.W.2d 270, 274 (Tenn. 1966), *overruled on other grounds by Camper v. Minor*, 915 S.W.2d 437 (Tenn. 1996))). "A plaintiff's burden to demonstrate outrageous conduct 'is not an easy burden to meet.'" *Weaver v. Pardue*, No. M2010-00124-COA-R3-CV, 2010 WL 4272687, at *5 (Tenn. Ct. App. Oct. 28, 2010) (quoting *Oates v. Chattanooga Pub. Co.*, 205 S.W.3d 418, 428 (Tenn. Ct. App. 2006)). Outrageous conduct "'does not extend to mere insults, indignities, threats, annoyances, petty oppression or other trivialities.'" *Bain*, 936 S.W.2d at 622 (quoting *Medlin*, 398 S.W.2d at 274). "[I]t is the court's duty in the first instance to apply that standard and determine 'whether the defendant's conduct may reasonably be regarded as so extreme and outrageous as to permit recovery. . . .'" *Bain*, 936 S.W.2d at 623 (quoting *Medlin*, 398 S.W.2d at 275). As our supreme court has explained:

> "The cases thus far decided have found liability only where the defendant's conduct has been extreme and outrageous. It has not been enough that the defendant has acted with an intent which is tortious or even criminal, or that he has intended to inflict emotional distress, or even that his conduct has been characterized by 'malice,' or a degree of aggravation which would entitle the plaintiff to punitive damages for another tort. Liability has been found only where the conduct has been so outrageous in character, and so extreme in degree, as to go beyond all bounds of decency, and to be regarded as atrocious and utterly intolerable in a civilized community. Generally, the case is one in which the recitation of the facts to an average member of the community would arouse his resentment against the actor, and lead him to exclaim, 'Outrageous.'"

*Bain*, 936 S.W.2d at 622–23 (quoting *Medlin*, 398 S.W.2d at 274 (quoting *Restatement (Second) of Torts* § 46 cmt. d (1965))). In recent cases, Tennessee courts have held that allegations of doctor-patient sexual assault, *Weaver*, 2010 WL 4272687, at \*6, forcing a victim to witness attempted murder and suicide, *Lourcey v. Estate of Scarlett*, 146 S.W.3d 48, 52 (Tenn. 2004), failure to report or investigate known sexual abuse, *Doe 1 ex rel. Doe 1 v. Roman Catholic Diocese of Nashville*, 154 S.W.3d 22, 42 (Tenn. 2005), and treating human remains in an improper manner, *Akers v. Prime Succession of Tennessee, Inc.*, 387 S.W.3d 495, 504 (Tenn. 2012), were sufficient to meet the outrageous conduct standard at least at the motion to dismiss stage. In contrast, however, we have declined to deem conduct outrageous when it involved comments made by an assistant district attorney that a defendant was a "bitch," *Odom v. Claiborne Cty., Tennessee*, 498 S.W.3d 882, 887 (Tenn. Ct. App. 2016), *perm. app. denied* (Aug. 18, 2016), racial discrimination by a pizza delivery company, *Arnett v. Domino's Pizza I, L.L.C.*, 124 S.W.3d 529, 540 (Tenn. Ct. App. 2003), and comments that the plaintiff had performed a "money switch" and threatening to call police to investigate. *See Brown v. Mapco Exp., Inc.*, 393 S.W.3d 696, 704 (Tenn. Ct. App. 2012).

The conduct alleged to be outrageous in this case falls far closer to the type of conduct that we have previously held was insufficient to constitute outrageous conduct necessary to sustain a claim for intentional infliction of emotional distress. Rather, the facts in this case most closely align with the facts in *Brown v. Mapco*, wherein the clerk of a convenience store accused the plaintiff of "tryna do a money switch," which the plaintiff characterized as an allegation of criminal activity. *Id.* at 709. We held, however, that these allegations "fall[] squarely within the realm of 'mere insults, indignities, threats, annoyances, petty oppression or other trivialities[]'" for which there is no recovery in intentional infliction of emotional distress. *Id.* at 704 (quoting *Bain*, 936 S.W.2d at 622). Here, Appellant was clearly insulted by Appellees' decision to terminate his employment after decades of service. That decision and the alleged comments that followed, even if taken as true, simply do not constitute the type of outrageous conduct for which Appellant may recover in an intentional infliction of emotional distress claim. As such, the trial court did not err in dismissing this claim against Mayor Lawson.

### Count 7 – Work Place Harassment

Appellant next asserts that the trial court erred in dismissing his claim for workplace harassment. As previously discussed, the trial court erred in ruling that Hickman County enjoyed complete governmental immunity with regard to this claim. In order to prevail on this claim, however, Appellant's complaint must include "'a direct showing [of] negligence on the part of the governmental entity.'" *Hughes v. Metro. Gov't of Nashville & Davidson Cty.*, 340 S.W.3d 352, 368–69 (Tenn. 2011) (quoting *Pendleton v. Metro. Gov't of Nashville & Davidson Cnty.*, No. M2004-01910-COA-R3-CV, 2005 WL 2138240, at \*3 (Tenn. Ct. App. Sept. 1, 2005)). Consequently, Appellant's claim cannot survive Appellees' motion to dismiss without some allegations "of

negligence by the governmental entity in supervision of one of its employees acting within the scope of employment." *Hughes*, 340 S.W.3d at 369.

Here, Appellant's amended complaint contains the following allegations related to this claim:

> 213. [Appellant] suffered workplace harassment as a result of the tangible employment action taken by [Mayor Lawson].

> 214. [Mayor Lawson] was [Appellant's] supervisor and had the authority to undertake or recommend tangible employment actions affecting the Plaintiff, and was, in fact, was [Appellant's] direct supervisor.

> 215. [Appellees'] action of firing the Plaintiff is a tangible employment action, as it required an official act by [Appellees], was documented in County records, was (or at least should have been) subject to review by the County Commission, required [Mayor Lawson's] approval, and inflicted direct economic harm to [Appellant].

Even taking these allegations as true, they simply do not contain any allegations of direct negligence on the part of Hickman County. Indeed, from a review of Appellant's amended complaint, there are no allegations that Hickman County had the authority but failed to supervise Mayor Lawson, nor are there any other allegations of direct negligence against Hickman County with regard to Appellant's allegations of workplace harassment.

Moreover, we note once again that Appellant's brief on this issue is largely deficient. For example, Appellant cites no law in his initial brief in support of his contention that this claim should survive Appellees' motion to dismiss other than a conclusory citation to a rule of civil procedure. Again, Appellant attempts to expand upon his deficient presentation in his reply brief by pointing out Hickman County's harassment policy cited in the Personnel Manual. *See Adler v*, 2015 WL 1543260, at *6 (holding that this practice is inappropriate). We note, however, that this policy was not cited in Appellant's complaint or amended complaint, but rather was first included in an exhibit to Appellees' motion to dismiss.[13] Finally, although Appellant does cite a single case in his reply brief to support this claim, the cited case does not support Appellant's contention that a stand-alone workplace harassment claim is created by the Personnel Manual. *See King v. TFE, Inc.*, 15 S.W.3d 457, 460 (Tenn. Ct. App. 1999) (holding that the specific language of the employee handbook evinced an intent not to be bound by the provisions therein; not involving workplace harassment). Under the totality of the circumstances, we conclude that dismissal of this claim is appropriate.

## Count 8– Intentional Misrepresentation

---

[13] Curiously, Appellant wishes to cite this portion of the Personnel Manual in support of his claims despite not being included in his complaint pursuant to Rule 10.03, while depriving Appellees' of the ability to rely on the remainder of the Personnel Manual in their motion to dismiss.

We next address Appellant's claim for intentional misrepresentation against Mayor Lawson. Here, Appellant alleges in his amended complaint that

218. [Appellees] made a representation directly to [Appellant] that he would have a job as a Communication Tech, earning a salary of $45,000 per year and that [Appellant's] wife would also receive a raise, at the conclusion of [Appellant's] tenure as Director.

219. Additionally, [Mayor Lawson] made the claim to [the County] Finance Director, that [Appellant] was having an extramarital relationship with his co-worker[.]

220. This fact was a material fact and the representation made by Defendants was false.

221. Because [Mayor Lawson] did not have the approval of the County Commission, [Appellees] knew that the representation was false when it was made or [Appellees] made the representation recklessly without knowing whether it was true or false.

222. [Mayor Lawson] was without sufficient information to know whether the alleged affair did or did not occur and spoke to [the County Finance Director] without any regard to the truth.

223. [Mayor Lawson] intended that the [Appellant] rely upon the representation and [Appellant] steadfastly maintains his relationship with [the co-worker] was nothing more than a working relationship and any insinuation otherwise is high offensive and inflammatory.

224. [Appellant] did not know, until the Salary and Benefits Committee Meeting on January 12, 2015, that the representation was false and until that time [Appellant] was justified in relying upon the truth of the representation made by [Mayor Lawson].

According to Appellant's recitation of facts in his amended complaint, when informing Appellant that a new "job was going to be created," Mayor Lawson "stated he had already convinced some County Commissioners the position was going to be created for [Appellant]" and detailed the salary for the position. Appellant's amended complaint specifically quotes Mayor Lawson as informing Appellant that "I'm going to fight to get you some more money and her a raise." According to the complaint, although Mayor Lawson did in fact present a proposal to create a position for Appellant to the County Commission, the County Commission "advised Mayor Lawson there was no salary available and the committee did not identify alternative funds that could be used." The issue was never revisited by the County Commission. In other parts of his amended

complaint, Appellant describes Mayor Lawson's statement regarding the anticipated job as a "promise[.]"

In order to prevail on a claim for intentional misrepresentation, the plaintiff must show

> (1) that the defendant made a representation of a present or past fact; (2) that the representation was false when it was made; (3) that the representation involved a material fact; (4) that the defendant either knew that the representation was false or did not believe it to be true or that the defendant made the representation recklessly without knowing whether it was true or false; (5) that the plaintiff did not know that the representation was false when made and was justified in relying on the truth of the representation; and (6) that the plaintiff sustained damages as a result of the representation.

*Hodge v. Craig*, 382 S.W.3d 325, 343 (Tenn. 2012) (citing *Walker v. Sunrise Pontiac-GMC Truck, Inc.*, 249 S.W.3d 301, 311 (Tenn. 2008)). Thus, "in order for a fraudulent misrepresentation to be actionable, it must consist of a statement of an existing or past material fact, made with knowledge of its falsity or with reckless disregard of the truth." *Fowler v. Happy Goodman Family*, 575 S.W.2d 496 (Tenn. 1978).

We begin with Appellant's claim that Mayor Lawson made a false statement that Appellant was engaging in an extra-marital affair, which Appellant asserts falls within the auspices of the tort of intentional misrepresentation. Here, the trial court dismissed this claim on the basis that Appellant failed to show how he justifiably relied upon this alleged misrepresentation. We agree. "Justifiable reliance is a necessary element in a cause of action based upon [intentional] misrepresentation." *McNeil v. Nofal*, 185 S.W.3d 402, 409, 411 (Tenn. Ct. App. 2005) (noting that this element is "indispensable"). The burden is on the plaintiff to show reasonable reliance. *Johnson v. Dattilo*, No. M2010-01967-COA-R3-CV, 2011 WL 2739643, at *8 (Tenn. Ct. App. July 14, 2011) (citing *McNeil*, 185 S.W.3d at 409). Appellant's complaint contains only a conclusory assertion that Mayor Lawson intended that Appellant "rely upon the representation" that Appellant was having an extra-marital affair, but does not assert that Appellant actually relied upon that statement to his detriment. Although we note that complaints need not contain factual allegations "in minute detail," the complaint must contain allegations "'from which an inference may fairly be drawn that evidence on these material points will be introduced at trial.'" *Givens v. Mullikin ex rel. Estate of McElwaney*, 75 S.W.3d 383, 399 (Tenn. 2002). Here, in the absence of more specific details, it is difficult to discern how Appellant could have justifiably relied upon a statement that he was having an affair, when he asserts that the statement is categorically false, an alleged truth that he was fully aware of at the time the statement was allegedly made. In the absence of more specific allegations to illuminate this claim, we must conclude that the trial court did not

err in ruling that Appellant's complaint fails to allege sufficient facts to show justifiable reliance with regard to this alleged statement.

We next consider allegations related to Mayor Lawson's offers of employment, specifically Mayor Lawson's statements regarding (1) creation and funding of a new job by Hickman County; (2) the hiring of Appellant to fill the newly created position; and (3) a raise for Appellant's wife. From our review of Appellant's allegations, none indicate that Mayor Lawson misstated a past or present fact as required to make out a claim for intentional misrepresentation. Rather, from our review, the statements alleged to have been false involve Mayor Lawson's intention to take future action to create a new job for Appellant and obtain a raise for Appellant's wife. In a similar situation, this Court has held that "plans, expectations, and intentions concerning future hiring" do not constitute statements of existing or past fact necessary to sustain a claim for intentional misrepresentation. *Henley v. Labat-Anderson, Inc.*, No. 03A01-9104-CV-126, 1991 WL 120403, at *2 (Tenn. Ct. App. July 9, 1991).

We note, however, that future promises may sustain a claim for promissory fraud. Following a pronouncement by the Tennessee Supreme Court that it would adopt the majority view allowing claims of promissory fraud "in a proper case where justice demands[,]" this Court has considered the tort on a number of occasions. *Id.* at *3 (quoting *Fowler v. Happy Goodman Family*, 575 S.W.2d 496 (Tenn. 1978) (applying the majority rule but concluding that the facts did not support the promissory fraud claim) (quoting *Bolan v. Caballero*, 220 Tenn. 318, 326, 417 S.W.2d 538, 541 (Tenn. 1967) (first recognizing the possible viability of the tort))); *see, e.g., Isaac v. Ctr. For Spine, Joint, & Neuromuscular Rehab., P.C.*, No. M2010-01333-COA-R3-CV, 2011 WL 2176578, at *6 (Tenn. Ct. App. June 1, 2011) (applying the majority view); *Houghland v. Houghland*, No. M2005-01770-COA-R3-CV, 2006 WL 2080078, at *3 (Tenn. Ct. App. July 26, 2006) (outlining the elements of promissory fraud as: "(1) an intentional misrepresentation of a fact material to the transaction; (2) knowledge of the statement's falsity or utter disregard for its truth; (3) an injury caused by reasonable reliance on the statement; and (4) a promise of future action with no present intent to perform."); *Keith v. Murfreesboro Livestock Mkt., Inc.*, 780 S.W.2d 751, 754 (Tenn. Ct. App. 1989) (discussing the tort); *Farmers & Merchants Bank v. Petty*, 664 S.W.2d 77, 80–81 (Tenn. Ct. App. 1983) (same); *Brungard v. Caprice Records, Inc.*, 608 S.W.2d 585, 590 (Tenn. Ct. App. 1980) (opining that the Tennessee Supreme Court would follow the majority rule with regard to claims of promissory fraud). In those cases, we have held that recovery is limited "to those cases where the statement of intention is shown to be false when made (i.e., a misrepresentation of actual present intention) by evidence other than subsequent failure to keep the promise or subjective surmise or impression of the promisee." *Farmers*, 664 S.W.2d at 80–81; *see also Keith*, 780 S.W.2d at 754 (holding that in order to establish promissory fraud, the statement "must embody a promise of future action without the present intention to carry out the promise"). Additionally, "[i]t is essential to recognize that, in the context of a claim of promissory fraud, 'the mere fact

that the promisor failed to perform the promised act is insufficient by itself to prove fraudulent intent.' This is because . . . 'not every broken promise starts with a lie.'" ***Isaac v***, 2011 WL 2176578, at *6 (quoting ***Styles v. Blackwood***, No. E2007-00416-COA-R3-CV, 2008 WL 5396804, at *7 (Tenn. Ct. App. Dec. 29, 2008)).

Despite the fact that Appellant characterizes Mayor Lawson's statements as "promises" in the amended complaint, Appellant has failed to argue that this claim constitutes a claim for promissory fraud. From our review, promissory fraud was not raised in the trial court, in Appellant's initial brief, or even in Appellant's reply brief. Rather, Appellant asserts that Mayor Lawson's "job offer" was a statement of existing fact sufficient to meet the requirements of intentional misrepresentation. Generally, arguments that are not raised in the trial court or on appeal are waived. ***Dye v. Witco Corp.***, 216 S.W.3d 317, 321 (Tenn. 2007) (holding an issue was waived where it was raised for the first time on appeal); ***Smith v. Hi-Speed, Inc.***, 536 S.W.3d 458, 482 (Tenn. Ct. App. 2016) ("Issues not raised in a brief are considered waived.").

In a similar situation, this Court has declined to reverse a trial court's grant of summary judgment, in part because the plaintiff "has not asserted an action for promissory fraud." ***Henley***, 1991 WL 120403, at *3 (affirming summary judgment also on the basis that no admissible evidence was presented to support the allegation that addressed promissory fraud). Here, the allegations in the amended complaint illustrate that Mayor Lawson did not unequivocally promise Appellant future employment, but rather indicated his intent and his effort to do so. Although Appellant's amended complaint asserts that the statement that Appellant "would have a job" was false when made, the amended complaint contains no allegations that Mayor Lawson made the "promise of future action with no present intent to perform." ***Houghland***, 2006 WL 2080078, at *3. In fact, the allegations in the amended complaint show the opposite to be true, as Appellant alleges that Mayor Lawson indeed presented the issue to the County Commission, which indicated that funds were not available for the position. Thus, Appellant's own allegations negate an essential element of this tort. Given that Appellant has failed to address promissory fraud in any manner in this appeal or in the trial court and Appellant's failure to allege facts sufficient to establish the prima facie elements of this tort, we decline to reverse the trial court's dismissal of this claim.[14]

## Count 9 – Negligent Misrepresentation

Finally, Appellant contends that the trial court erred in dismissing his claim against Mayor Lawson for negligent misrepresentation. Appellant's allegations with regard to this claim largely track the allegations contained in Appellant's intentional misrepresentation claim with regard to the "bogus job offer" made by Mayor Lawson.

---

[14] Appellees also argue that Mayor Lawson could not be sued in his individual capacity with regard to this claim because his action in making the job offer could only be considered part of his official duties. Given our resolution of this claim, we decline to address this argument.

"'[T]o succeed on a claim for negligent misrepresentation, a plaintiff must establish 'that the defendant supplied information to the plaintiff; the information was false; the defendant did not exercise reasonable care in obtaining or communicating the information and the plaintiffs justifiably relied on the information.'" *Morrison v. Allen*, 338 S.W.3d 417, 437 (Tenn. 2011) (quoting *Walker v. Sunrise Pontiac-GMC Truck, Inc.*, 249 S.W.3d 301, 311 (Tenn. 2008)). In order to prevail in a claim for negligent misrepresentation, plaintiff must therefore show

> (1) that the defendant was acting in the course of its business, profession, or employment, (2) that the defendant supplied false information for the guidance of others in its business transactions, (3) that the defendant failed to exercise reasonable care in obtaining or communicating the information, and (4) that the plaintiff justifiably relied on the information.

*Sears v. Gregory*, 146 S.W.3d 610, 621 (Tenn. Ct. App. 2004) (citing *John Martin Co. v. Morse/Diesel, Inc.*, 819 S.W.2d 428, 431 (Tenn. 1991)). In addition, we have held that the alleged misstatement "must consist of a statement of a material past or present fact." *McElroy v. Boise Cascade Corp.*, 632 S.W.2d 127, 130 (Tenn. Ct. App. 1982) (citing *Haynes v. Cumberland Builders, Inc.*, 546 S.W.2d 228, 232 (Tenn. Ct. App. 1976)). Thus, "conjecture or representations concerning future events are not actionable even though they may later prove to be false." *McElroy*, 632 S.W.2d at 130 (citing *Young v. Cooper*, 30 Tenn. App. 55, 203 S.W.2d 376 (Tenn. 1947)). We have recently held that "a statement of intention and representation of a future event . . . is legally infirm to support a cause of action for negligent misrepresentation." *Jones v. BAC Home Loans Servicing, LP*, No. W2016-00717-COA-R3-CV, 2017 WL 2972218, at *11 (Tenn. Ct. App. July 12, 2017) (citing *McElroy*, 632 S.W.2d at 130). As we noted above, the alleged statements made by Mayor Lawson concerning future employment opportunities with Hickman County constitute statements of future intention, rather than of existing or past fact. Consequently, like his claim for intentional misrepresentation, Appellant's negligent misrepresentation claim against Mayor Lawson must fail.

### Conclusion

The judgment of the Circuit Court of Hickman County is affirmed in part, reversed in part, and remanded to the trial court for further proceedings consistent with this Opinion. Costs of this appeal are taxed to Appellant David R. Fitzgerald, and his surety.

_____
J. STEVEN STAFFORD, JUDGE